Arthur Connolly

*vs.*

Wm. F. Davidson, Impleaded, &c.

On, the 4th November, 1864, the steamboats "Albany" and "John Rumsey," were navigating the Mississippi in the passenger and freight business. Plaintiff was a deck hand on the "Albany." While the boats were near each other the "John Rumsey's" boiler exploded, whereby plaintiff was injured.

*Held,* that the rule that the master is not liable to one of his servants, for injuries sustained by him through the negligence, &c., of a fellow servant engaged in the same general business, does not apply, though appellant were a partner in the business of so running both boats.

Also, that the fact of such explosion is full *prima facie* evidence, as against those interested in the boat's navigation as joint owners of her earnings and profits, that it was caused by their fault or negligence or that of their servants. Also, that *sec.* 13 *of the Act of Congress approved July* 7, 1838, (5 *U. S. Stat. at Large, p.* 306,) is not limited in its application to suits brought by passengers, but that, under its provisions, such fact was full *prima facie* evidence of negligence in this case.

The plaintiff offered evidence tending to prove that said boat was jointly owned and managed by appellant and one H. T. Rumsey. The appellant introduced evidence tending to prove that she was exclusively owned and managed by said H. T. Rumsey, and also, that said Rumsey, owning said boat and another, and appellant, several, one, the "Chippewa Falls," and appellant and his brother owning the "Albany," and each running his own boats in the aforesaid business, they had agreed, that at the end of the season of navigation, they should divide in certain agreed proportions the earnings of said boats between them; the earnings of the "John Rumsey" and "Chippewa Falls" to be equally divided; that each should then render to the other, an account of the earnings of his boats, the balance, according to the proportions agreed on, to be then paid over; each to have the exclusive control and management of his

own boats and business. The jury were instructed that "if Rumsey owned the 'John Rumsey,' and Davidson the 'Chippewa Falls' and other boats, and it was agreed between them that each should employ the men and manage his own boats, and at the end of the season, the profits of the boats were to be divided between them, that made them partners in running the boats, and each responsible for the carelessness and negligence of the officers and men of each boat." *Held*, to be correct in point of law. That the the presumption being, that this language was used by the court and understood by the jury in the ordinary and correct sense of an agreement for the division of profits, as such, which would vest a present interest or ownership in them as they accrued and before they were divided, the agreement described would, as to third persons, create the relation of partners. Also, that even if the evidence of defendant, had no tendency to prove the state of facts assumed by the instructions, the charge was not objectionable on the ground that the jury would be misled by it into that belief; for plaintiff's evidence being sufficient to sustain the verdict, it could not be said that the *result* showed that the jury were misled by the generality of the charge. If defendant feared any such misapprehension he should have requested a more specific instruction, and as the bill of exceptions does not purport to give the charge in full, it is to be presumed that other instructions sufficiently explicit to prevent such misapprehension were in fact given.

The jury were also instructed that "if Davidson was equally interested with Rumsey, in the earnings and profits of the 'John Rumsey,' that made them partners in running the boat." *Held*, not to be open to the objection that it is to the effect that any interest without regard to its character in such earnings and profits would make defendant such partner. If it necessarily implied (which it does not) that Rumsey was sole owner of the boat, his interest in her earnings must be that of an owner thereof, and if Davidson's were not, he would not in that respect be on an equality with Rumsey. *Equally* interested imports *equality in all respects.*

This action was brought in the district court for Dakota county, against the defendant Davidson, and Harvey T. Rumsey, to recover damages for personal injury alleged to have been caused by the explosion of the boiler of the steamboat "John Rumsey," and is of the same character as that of *McMahan vs. Davidson*, 12 *Minn.* 357, and of *Fay*

*vs. Davidson,* 13 *Minn.* 523; the explosion in this case being the one mentioned in said cases. The defendant Davidson appeared, and after issue was joined, the cause was removed by stipulation to the district court for Ramsey county, and tried therein, resulting in a verdict for the plaintiff.

The cause comes to this court upon a bill of exceptions, made and settled on the part of the defendant Davidson.

Upon the trial it appeared that the plaintiff was a deck hand on board the steamboat "Albany" at the time of the explosion, and sustained injuries therefrom. Evidence was given tending to show that the explosion was the result of negligence or misconduct on the part of those engaged in navigating the "John Rumsey;" and also that at the time of the explosion, the second engineer, who was in charge of her engine, was not a licensed engineer, under the laws of the United States. Plaintiff also gave in evidence the deposition of Harvey T. Rumsey, who testified "that at the time of the explosion, the steamer "John Rumsey," was owned by him, (Rumsey) and the defendant Davidson ; that Davidson's interest was one half interest in the boat, and one half of her earnings ; that the other half of the boat and earnings were owned by himself, and that both had the management of the boat, and they accounted together for her earnings." Other testimony was given on the part of the plaintiff tending to show that Davidson was interested in the earnings of the "John Rumsey," and that he and Rumsey managed the boat together during the season of 1864, (the explosion occurred in November, 1864.)

The defendant introduced evidence tending to show that at the time of the explosion, the "John Rumsey" was properly enrolled under the laws of the United States ; that her boiler was duly inspected and a certificate of inspection duly

issued in September, 1864; that her second engineer was a competent and skilful engineer, and that the explosion was not owing to any defect in her machinery, nor to any negligence or want of due care and skill on the part of those engaged in navigating her.    Defendant also gave in evidence the testimony of a number of witnesses tending to show, that during the season of 1864, and at the time of the explosion, the "John Rumsey" was wholly owned by, and under the exclusive management and control of Harvey T. Rumsey, and that Rumsey employed the persons engaged in navigating her, and that Davidson had not controlled or managed her or those engaged in navigating her.

Defendant testified in his own behalf, "That at the time of the explosion he did not own any interest 'in the 'John Rumsey,' and was not interested in her in any way, and did not have nor exercise any control over, or management of her, or those engaged in navigating her, and did not employ them, and that she was exclusively owned and controlled by Harvey T. Rumsey."   He also testified to an arrangement, by which he and said Rumsey were to divide the earnings of the "John Rumsey," and another steamboat owned by said Harvey T. Rumsey, and the steamboats "Chippewa Falls" and the "Albany" owned by himself, and in part by his brother, during the summer of 1864, and that by such arrangement "each should have the exclusive control and management of his own boats and business, without any right on the part of the other to interfere with the same in any way; it being expressly understood that there should be no mixing of management, but that each should run his own boats as he pleased, and where he pleased."

The plaintiff requested the court to charge the jury as follows :

I.   "If the boiler of the 'John Rumsey' exploded through

Connolly v. Davidson et al.

the fault of the officers of the boat as alleged in the complaint, and injured the plaintiff without his fault, and the defendants Davidson and Rumsey were at the time jointly interested in the navigation of the boat, as owners of her earnings and profits, they are both and each equally responsible to the plaintiff for the acts of the officers of the boat in causing the explosion; and it is immaterial, as regards such liability whether or not the boat itself was the sole property of one of them, and controlled, and the officers and men employed by one of them. If the boat was navigated for their joint benefit and profit, the acts of one in employing the officers and men, and managing the boat, were the acts of both, so far as third persons were concerned."

II. "If Rumsey owned the 'John Rumsey,' and Davidson owned the 'Chippewa Falls' and other boats, and it was agreed between them, that each should employ the men and manage his own boats, and at the end of the season, the profits of the boats were to be divided between them, that made them partners in running the boats, and each responsible for the carelessness and negligence of the officers and men of each boat."

III. "If Davidson was equally interested with Rumsey, in the earnings and profits of the 'John Rumsey,' that made them partners in running the boat, and equally responsible for the carelessness and negligence of the officers and men on the boat, and it is immaterial which of them employed the men and managed the business of the boat."

IV. "If the boiler of the 'John Rumsey' exploded and injured the plaintiff, without any fault on his part, and the defendants Davidson and Rumsey were interested at the time in the navigation of the boat, as joint owners of her earnings and profits, the fact of such explosion is of itself full and sufficient evidence that it was caused by the fault

or negligence of the defendants, or those in their employment, and entitled the plaintiff to recover, unless the defendants showed that no negligence or fault was committed by them, or those in their employment."

The several requests were so given to the jury, and the defendant duly excepted to each and all of them.

The defendant Davidson requested the court to charge the jury as follows :

I. "The master is not liable to one of his servants, for injuries sustained by him through the negligence, carelessness or misconduct of a fellow servant engaged in the same general business unless the injury results from the incompetency of such fellow servant, and such fellow servant was employed by such master."

II. "The mere fact of the defendant Davidson having an interest in the earnings of the boat at the end of the season would not make him liable for any injuries sustained by reason of its explosion, if he had not such an interest in it, so as to control or take part in the hire of servants or in discharging them, by whom the negligence, if any, occurred."

III. "A mere prospective interest in the earnings of the steamboat 'John Rumsey,' to attach and be ascertained at the end of the season or time during which such earnings accrued and were made, and without any ownership or estate in said boats, and without any control of or participation in the management thereof, does not make defendant Davidson a co-partner with the owner of said steamboat in the business thereof, nor make him liable for the acts and omissions of the servants, officers or employees of or on said boat."

IV. "The provisions of section 13 of the act of Congress entitled 'An act to provide for the better security of the lives of passengers on board of vessels propelled in whole

Connolly v. Davidson et al.

or part by steam,' approved July 7, 1838, do not apply as a rule of evidence, except in cases of suits brought by passengers." The court refused so to charge, and defendant duly excepted to each and all of such refusals.

The court charged the jury "that under the provisions of said section 13 of said act of Congress, the fact of the explosion of the boiler of the John Rumsey was full *prima facie* evidence of negligence"; to which charge the defendant duly excepted.

ALLIS, GILFILLAN & WILLIAMS, for Appellant.

I.   The charge of the court, as to what would constitute Davidson and Rumsey partners, and its refusal to give the charge on the same point requested by defendant were errors, because:

1st.   The charge to the effect, that any interest (without any regard to its character) in the earnings and profits of Rumsey's boats, would make Davidson a partner with Rumsey.

2d.   The refusal assumes in substance, that the agreement testified to by Davidson made him a partner with Rumsey.

II.   Except where parties have held themselves out as partners, or acted so as to induce others to believe they are such, the intentions of the partners must determine whether they are partners or not. *Story on Partnership*, sec. 49. *Parsons on Partnerhip, page* 61.

Such intention is ascertained—

*First*—By being expressed in the contract between them.

*Second*—When not so expressed, by the contract giving to each with respect to the business, profits, or property,

vol. 15—34

the interest, rights, duties and obligations, which in law belong to partners.

III. A mere *interest* in the earnings or profits of a business does not make one a partner in it, nor does partaking of profits, "nor being entitled to an account," necessarily make one a partner. *Day vs. Boswell*, 1 *Campbell*, 330; *Wish vs. Small*, 1 *Campbell*, 331; *Miller vs. Bartlett*, 15 *Serg. & Rawle* 137; *Rice vs. Austin*, 17 *Mass. R.*, 971, 205; *Baxter vs. Redman*, 3 *Pick, R.*, 433; *Cutler vs. Wisner*, 6 *Pick R.*, 335; *Turner vs. Bissell*, 14 *Pick R.*, 192; *Perrin vs. Hankinson*, 6 *Halsted R.*, 181; *Loomis vs. Marshall*, 12 *Conn.* 69; *Muzzy vs. Whitney*, 10 *John* 226; *Vanderburg vs. Hall*, 20 *Wendell* 70.

IV. The interest in profits requisite to make one a partner must be "an interest in the profits as profits," that is, a specific interest or ownership in them, "as they accrue and before they are ascertained and divided." *Story on Partnership, Sec.* 32 *to* 37; *Parsons on Partnership, pages* 68 *to* 71 *and note.*

V. The refusal of the court to charge, presents the question whether such an agreement as the defendant's testimony tends to prove, would, as a matter of law, make him a partner with Rumsey. Did it give defendant a specific interest as owner in the profits as they accrued.

1st. That agreement expressly excluded each from the usual rights of a partner in the boats and business of the other; each was to carry on the business of his own boats, as he pleased and where he pleased, without any right to interfere in any way (even by advising or calling to account) on the part of the other. Each was to be the exclusive *owner* of the business of his own boat, and consequently of the earnings—at least so the jury might have found the effect of the agreement.

2d. It was merely an agreement, that after the business done by each should be finished for the season, the one who should have earned more than the other, according to certain proportions, should pay to the other a certain portion of the excess, to be ascertained by each at the close of the season, rendering to the other an account of the earnings of his boats, the losses not to be taken into account.

This last fact, according to *Story, Sec.* 34, shows that the interest, if any, was not in the profits, *as profits,* such as is necessary to make one a partner.

According to Parsons it is a fact from which the jury may, in connection with the other facts, find that there is not such an interest as is requisite to make one a partner. *Parsons on Part., pages* 88 *to* 91 *and note.*

The contract was merely personal, creating only a personal liability, but no specific interest in, or lien upon the earnings of the respective boats.

VI. If there was a partnership, the Albany and John Rumsey were in it, and the court erred in refusing to charge as requested by defendant, upon the liability of the master to one servant for injuries caused by the negligence or misconduct of another in the same general business. *Coon vs. S. U. & R. R. Co.,* 1 *Selden,* 492 ; *Sherman vs. R. & S. R. R. Co.,* 17 *N. Y.,* 153.

VII. The court erred in its charge, and in its refusal to charge as to the application of the act of Congress, mentioned in the defendant's request. *See the act of Congress.*


SMITH & GILMAN, for Respondent.

The only questions before this court in this case are as to the correctness of the charge of the court to the jury.

In support of the first three propositions which the plain-

tiff requested the court to charge the jury, and which were given as requested, we refer to the following authorities : *Bostwick vs. Champion*, 11 *Wend.* 571 ; *Bostwick vs. Champion*, 18 *Wend.* 175 ; *Cotter vs. Bettner*, 1 *Bosworth*, 490 ; *Cobb vs. Abbot*, 14 *Pick.* 289.

In regard to the test of partnership, Mr. Parsons, in his late work on partnership, says, in *note (C,) page* 57 : "If there be an ownership of the profits, while they are profits, that one circumstance alone will constitute a complete partnership. Hence a joint ownership of profits seems to be the real test of partnership, since it is that thing which by itself is sufficient to constitute an actual partnership, and without which none ever exists."

The plaintiff's *fourth* request, which was given, is decided as correct by this court, in *McMahan vs. Davidson*, 12 *Minn.*

The first request of defendant was properly refused by the court.

1st. Because it was a mere abstraction having no application to the facts of the case. It ignores the idea of partnership, and the responsibility of one partner for the acts of his co-partner, which is the question in dispute in this case.

2d. It is not a correct proposition in its application to this case, as it embodies the idea, that the servant causing the injury must have been employed by Davidson himself, and not by his co-partner.

3d. The plaintiff was not on the boat that blew up, but on another boat, and therefore not the servant of the defendant in the sense of the rule referred to. .

The correctness of the rulings of the court upon the other propositions of defendant, is shown by the authorities hereinbefore referred to. There was no error in the court below.

Connolly v. Davidson et al.

*By the Court*—RIPLEY, CH. J.—On the 4th Nov. 1864, the plaintiff was employed as a deck hand on board the steamboat Albany, on which day said boat and the steamboat John Rumsey were navigating the Mississippi river, and when near Saint Paul, and near each other, the boiler of the John Rumsey exploded, by which personal injuries were occasioned to the plaintiff, to recover damages for which this action was brought, in which at the May term, 1868, of the district court of Ramsey county, the jury returned a verdict for plaintiff, and against defendant Davidson. The case comes up upon exceptions to instructions given by the court to the jury, and to its refusal to give certain instructions prayed for by defendant Davidson.

The explosion is that out of which the actions of *McMahon vs. Davidson*, 12 *Minn.* 357, and *Fay vs. Davidson*, 13 *Minn.* 528, arose.

In the former, plaintiff was a deck hand on the Rumsey, in the latter, a passenger on the Albany. We are unable to see how the fact that plaintiff was a deck hand on the Albany makes any difference in principle. Those decisions, therefore, sustain the instructions given, and the refusal to give the instruction asked by defendant as to the effect of the explosion as evidence of negligence, and the application of the act of Congress, as the same are set out in the bill of exceptions. The second and third instructions asked by the defendant and refused, are identical respectively with the second and fifth asked for by him in *Fay vs. Davidson*, and held in that case to have been properly refused ; the latter as abstract and inapplicable to the case, because the interest of Davidson, whatever it was, was not an interest attaching at the end of the season ; the former, because he might have an interest which would have made him responsible for the negligence of the employees on the John Rumsey, although

it did not give him a right to control or take part in the hire and discharge of such servants. These reasons are equally applicable to the present case. It follows that the second and third instructions asked were properly refused; and also, that such refusal does not, as the defendant contends, assume, in substance, that the agreement testified to by Davidson made him a partner with Rumsey.

The defendant objects further, that the charge is to the effect, that any interest without regard to its character, in the earnings and profits of Rumsey's boats, would make Davidson a partner with Rumsey, and the second and third instructions, given at plaintiff's request, are specified as those obnoxious to this objection : but they are not in our judgment.

As to the second instruction, the division there contemplated must, we think, be understood as a division of the profits, as such, of the boats. The word "profits," must be taken, as it is to be presumed that it would be taken by the jury, to mean the excess of receipts over expenditures ; that is, net earnings ; such being its usual, ordinary and correct meaning. A stipulation for a share of the net gains, is a stipulation for a share of profits, as such. *Story, Part. p.* 51. *Doe vs. Halsey,* 16 *Johns,* 34, 40. This instruction does not assume, then, that any interest, without regard to its character, in the earnings and profits of Rumsey's boats, would make Davidson a partner with Rumsey. Nor does the third : that does not necessarily imply that the boat was solely owned by Rumsey; but if it did, yet if Davidson were equally interested with Rumsey in her earnings, and profits, there must have been a joint ownership in the profits; for if Rumsey were sole owner of the boat, his interest in the profits would be that of owner, and so must Davidson's be, otherwise he would not, as to them, be, in that particular,

Connolly v. Davidson et al.

upon an *equality* with Rumsey.   *Equally* interested imports equality in *all respects.*

It will not be denied that an agreement for a share of profits, as such, would vest a present interest or ownership in them as they accrue and before they are divided.

The time at which the division is to take place is immaterial.  The second instruction as well as the third, assumes, therefore, a joint ownership in the profits.

The defendant however, objects further that said second instruction assumes that such a contract as Davidson testified to would have the effect to create the relation of partnership between himself and Rumsey.

The difference between his testimony as stated in *Fay vs. Davidson,* and in this bill of exceptions is obvious and we think material.   If his evidence, as here stated, would tend to prove an agreement to divide profits, as distinguished from gross earnings, the defendant's proposition is correct, otherwise not.  For it is not to be presumed that the court used, or the jury understood the word profits to be used in any other than the correct and ordinary sense above indicated.   Such an assumption as to the jury would be inconsistent with that intelligence which the theory of trial by jury pre-supposes.  *Raymond vs. Nye,* 5 *Met.* 151.   We are not prepared to say, however, that his evidence does *not* tend to prove an agreement to divide profits as distinguished from gross earnings.   The agreement was, that at the end of the season of navigation for that year, they should divide in certain proportions agreed upon the earnings of certain specified boats, including the earnings of the John Rumsey and Albany, the earnings of the said John Rumsey and Chippewa Falls to be equally divided, and that at the end of such season each should render an account of the earnings of his boats during such season, to the other, and then

the balance according to the proportions agreed on should be paid over.

Neither the principles which regulated the division, nor the proportions in which the earnings of the other boats were to be divided are stated, but it is quite conceivable, nay fairly to be inferred, that the probable cost of running each boat was taken into the account in settling the proportion of earnings with which it was to be credited, and that the cost of running the Chippewa Falls and John Rumsey, may have been assumed as equal. An equal division of their earnings would otherwise be apparently inequitable, in the absence, that is to say, of any information respecting the two boats other than that furnished by the bill of exceptions, and we cannot presume that the parties made any arrangement which would not look to an equitable division of the results of the business. If the parties assumed that the expenses of running each boat would be the same, then the agreement to divide the earnings equally, would be an agreement to divide profits.

Suppose, however, that Davidson's testimony has no tendency to prove an agreement to divide profits? There would then apparently be no evidence in the case so far as the bill of exceptions discloses it tending to prove the state of facts assumed by the second instruction : still the jury might, upon the evidence stated, have believed that Davidson and Rumsey jointly owned and managed the John Rumsey and found a verdict for plaintiff on that ground. It cannot, therefore, be said that the *result* shows that the jury were misled by the generality of the charge to believe that it referred to Davidson's evidence ; if not, and it was correct in point of law, the judgment will not be reversed because there was no evidence to warrant the charge. 3 *Gra. & W.* 828. Defendant might have asked for more specific instruc-

Connolly v. Davidson et al.

tions if he feared any misapprehension on the part of the jury. Indeed, this being a bill of exceptions not purporting to give the charge in full, we cannot presume that instructions sufficiently specific to prevent the jury from confounding the agreement sworn to by Davidson, with that assumed in the charge, were not given. Where the case comes up on such a bill of exceptions, the presumption is that the charge, where not set out, was full and correct on all material points.

The question remains whether this second instruction is correct in point of law.

In the first place, if a partnership existed between Davidson and Rumsey in the business of running the boats as stated in the bill of exceptions, Davidson was liable in tort for the negligence of a servant exclusively employed and paid by Rumsey, by which a third person should be injured while such servant was engaged in said business. *Coltner vs. Beltner* 1 *Bro.* 490. *Champion vs. Bostwick* 18 *Wend.* 175. The liability of one partner, for the acts of his copartner is but the liability of a principal for the acts of his agent. *Story*, *Part. sec.* 1. In the next place, it is not necessary that such partnership should have been intended or actually exist. It is sufficient if the facts are such that the relation exists as between the parties and third persons, whatever may have been the intentions of the parties in that behalf. *Champion vs. Bostwick and Wife*, 18 *Wendell* 175. The defendant says, however, that there was no connection in the business; each was to run his boats where he pleased, and as he pleased.

In the case last above cited, which presents many points of analogy with this, the decisive feature was, that all the fare received from passengers by any of the parties was to be a common fund for division. *Per Comstock J. in Merrick vs. Gordon*, 20 *N. Y.* 93.

· So here, all the receipts for passengers and freight on any part of the route of either boat, constituted a common fund for division. And in *Smith vs. Wright*, 1 *Abb. Pr. Rep.* 243, there was no more "mixing of management" than in this case, each of the firms alleged to be partners, having the exclusive control and management of the business done by it under the agreement between them. These two mercantile firms mutually agreed each to put out contracts in its own name, for sale and delivery of produce at future days, all profits of such adventures and all losses to be equally divided.

The court of appeals reversing the judgment of the supreme court, (*S. C. 5 Sanford*, 113) held that this agreement created the relation of partnership as to third persons, and that the one firm was liable as a partner upon a contract made by the other, accordingly, in its several name.

It is true the court observe in that case, that a community of interest in the profits is all that has ever been considered necessary to create a partnership as against third persons; whereas the modern English rule is, that the test whether a person who is not an ostensible partner in a trade is nevertheless in contemplation of law a partner, is not whether he is entitled to participate in the profits, although this affords cogent, often conclusive evidence of it, but whether the trade has been carried on by persons acting in his behalf. *Smith vs. Wright*, would nevertheless fall within the English rule, for if there was to be a community of interest in the profit and loss of each contract, the firm that made it was certainly acting on behalf of the other, as well as itself, in so doing.

Neither is the circumstance, if it be so, that by the agreement which the second instruction assumes, each would bear his own losses, at all inconsistent with the existence of a partnership as to third persons.

In *Waugh vs. Carver* 2 *H. Bl.* 235, the leading case on this subject, there was an express stipulation, that neither of the alleged partners should be answerable for the acts or losses of the other. In that case A. and B. ship agents at different ports, entered into an agreement to share in certain proportion, the profits of their respective agencies, and they were held partners as to third persons notwithstanding the above stipulation as to losses. Nor is it material "that the balance according to the proportion agreed on, was to be paid over at the end of the season." See a similar agreement in substance in *Waugh vs. Carver.* We might admit the English doctrine as laid down in *Wheelcroft vs. Hickman*, 99 *E. C. L.* 47, and yet the fact, that by the agreement which the second instruction assumes, the profits of the business were to be equally divided, would, we think, furnish conclusive evidence of the existence of a partnership as to third persons. Whatever should be earned by either under that agreement would be received on joint account, to be subsequently divided, which would make them partners as to third persons. 1 *Smith Lea. Ca. Pt.* 2, 1191. In carrying on the business in which it was earned each would act for the other as well as for himself. "A man who orders another to carry on trade, whether in his own name or not, to buy and sell, and pay over all the profits to him, is undoubtedly the principal, and the person so employed is his agent. So, if two or more agree that they should carry on a trade and share the profits of it, each is a principal, and each is an agent for the other, and each is bound by the other's contracts in carrying on the trade as much as a single principal would be by the act of an agent who was to give the whole of the profits to his employer. Hence it becomes a test of the liability of one for the contract of another, that he is to receive the whole

or a part of the profits arising from that contract by virtue of the agreement made at the time of the employment. I believe this is the true principle of partnership liability." *Per Lord Winsleysdale in Cox vs. Hickman* 99 *E. C. L.* 47, 99.

We perceive nothing in the state of facts assumed by the instruction which would go to repel the presumption arising from the agreement to share profits that in running his boats Rumsey was acting as well on behalf of Davidson as of himself. The instruction is therefore, we think, correct in point of law.

The defendant further excepts to the instructions given and to the refusal to give the first instruction prayed for by him, because, as he alleges, if there was a partnership the John Rumsey and Albany were in it, and as the jury must have found that plaintiff's injuries were sustained through the negligence or misconduct of those employed in navigating the John Rumsey, he must be considered as their co-employee, within the rule which exempts the master from liability to one of his servants for injuries sustained by him through the negligence, carelessness or misconduct of a fellow servant employed in the same general business. If Davidson's testimony does not tend to prove the state of facts assumed by the second instruction, there is no evidence that the Albany was included in any arrangement under which he and Rumsey were partners, in running the Rumsey. If it does however, the case on this bill of exceptions does not fall within the rule referred to. Plaintiff and those navigating the John Rumsey, cannot be said either to be engaged in the same common enterprise, or employed to perform duties and services tending to accomplish the same general purposes, as that language is used in the case of *Wright vs. Central R. R. Co.*, 25 *Wis.* 562, (relied on by

Connolly v. Davidson et al.

defendant,) as synonymous with "*the same general business*," nor are the examples there given of maintaining and operating a railroad, "operating a factory," "working a mine," or "erecting a building," at all analogous to the case at bar.    If, (and we think the test a good one as illustrated by the case of *Abrahams vs. Reynolds, 5 Hurlston and Norman,* 142,) the question in each case is, as the court of appeals state that it is, whether the alleged co-employees are under the same general control, the rule clearly cannot be claimed by defendant to apply here, for he swears that he and Rumsey had each the exclusive control and management of his own boats and hands.    Each boat, in fact, was doing a separate business in every respect, (though of the same sort) as much so as any two independent railroads separately owned and managed but run for the joint profit of the owners, in which easily conceiveable case, while the owners of the railroads might be partners as to third persons in the business of running each, the employees on each, though they were engaged in the common enterprise of maintaining and operating *that* road on which they were respectively employed, and assume the risks incident to *that* business, could no more be said to assume the risks incident to the business of maintaining and operating the road upon which they are not employed, than in the instance put in the leading case on this subject in this country of *Farwell vs. Boston & Wor. R. R.,* 4 *Metcalf,* 49.

There was no error, therefore, in the instruction in this respect and the instruction asked and refused, would, in our view of the case, be an abstract proposition having no application to the facts of the case and therefore properly refused.

Judgment affirmed.