# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

THE WISCONSIN CENTRAL RAILROAD COMPANY

*v.*

MARCELLA H. ROSS, Admx.

*Filed at Ottawa May 12, 1892.*

1. RAILROADS—*company using a railroad is liable for damages caused by its defects.* A railroad company is responsible for accidents caused by a defective track, and it is bound to exercise due care in carrying the passengers and property intrusted to it. It is therefore its duty to see that the road which it uses for such transportation is safe and in good repair, whether such road is owned by it or not. If it uses the track of another company for such purpose, it will be liable for damages to its passengers or freight by reason of defects in the road so used. This rule applies as between the railroad company and its employes.

2. Where the employe of a railroad company is directed to use the road of another company in the business of his employer, he has the right to treat such road as the road of the company employing him; and every railroad company whose employes use the road of another company under its direction or for its benefit, owes it as a duty to such employes to see that the road is not in a condition which will unnecessarily endanger their lives or limbs.

3. SAME—*several companies using a track—jointly and severally liable for its defects.* Where several railroad companies form an association and share the expense of operating a line of road, whether interested

in the profits or not, if they use a defective track for their joint bene-
fit and in their joint service they will be jointly liable for any injury
to their employes, resulting from the use of such track for the use of
which they were jointly responsible, and they will also be severally
liable.

4. SAME—*operated by trustees for bondholders—liability for injury
to employes—caused by defective track.* It is no defense to an action by
a servant of a railroad company to recover for a personal injury grow-
ing out of the use of a defective track, that at the time of the accident
the road was operated by certain trustees for the bondholders, where
there is no evidence that such trustees, if in possession, gave notice of
any kind to third parties or to the employes of the company that they
were operating the road, or that they were operating it in their own
names as trustees, but it appears if they operated the road at all it was
in the corporate name of the company.

5. A railroad company which has voluntarily placed itself and its
property and franchise in the hands of trustees to secure its debt to
bondholders, can not lie by when sued for a tort which it claims to
have been committed by such trustees, and shield both itself and the
trustees from liability by concealing the fact that the trustees are oper-
ating the road, until an action is barred by the Statute of Limitations.

6. SAME—*operated by trustees for the company and the bondholders—
trustees regarded as agents.* Where trustees of a railroad, selected by
the company and its bondholders, are placed in possession of the road,
who operate the same to earn money to be applied in payment of the
debts of the corporation, exercising only the right and franchise of the
company, such trustees must be regarded as the agents of the corpora-
tion in so far as relates to the transaction of business with third persons.

7. SAME—*operated by trustees—name by which the company may be
sued.* Where the trustees of a railway company incur a liability while
operating the road in the name of the corporation, while they may be
sued in their names as trustees, no reason is seen why an action can not
be maintained against them in the name they use.

8. SAME—*liability for acts of mortgagees in possession.* The court is
not to be understood as controverting the general doctrine that a rail-
road company is not liable at common law, or under the statutes im-
posing liability for injuries resulting in death, for the negligence of
mortgagees who are operating the road under a possession taken and
held adversely.

9. A mortgagor out of possession and control of property, real or
personal, ought not to be liable for the acts of the mortgagee who is
in possession of such property, and has an independent and adverse
control of it.

10. Torts—*joint and several liability.* If several persons are jointly bound to perform a duty, they will be jointly and severally liable for omitting to perform or for performing negligently. The law treats all torts as several as well as joint. The injured party may, at his election, sue all the partners or joint tort feasors, or any one or more of them, for the tort. The rule is not confined to partnerships, but extends to all cases of joint torts, at the common law, whether positive or constructive.

11. Where a person has received an actionable injury at the hands of two or more wrongdoers, all, however numerous, will be severally liable to him for the full amount of damages occasioned by such injury, and the plaintiff will have his election to sue all jointly, or he may bring his separate action against each or any one of the wrongdoers.

12. Same—*liability of partners.* Partners are liable, jointly and severally, for torts committed in the course of the partnership business.

13. Practice—*directing what the verdict shall be.* Where there is evidence which tends to show the liability of the defendant, this will be sufficient to justify the submission of that question to the jury, and an instruction to find for the defendant will be properly refused.

14. New trial—*not granted for cumulative or impeaching testimony.* A new trial will not be granted for newly discovered evidence which is merely cumulative to that given on the trial, nor for the purpose of impeaching the testimony of a witness.

Appeal from the Appellate Court for the First District:— heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

Mr. James L. High, and Mr. H. S. Boutell, for the appellant:

If it were true that the trustees of the Wisconsin Central Railroad Company were, at the time of the accident, members of the Wisconsin Central Line, and were, upon any theory, responsible for the accident, the important question of law would still arise, whether upon that state of facts an action would lie against such railroad company. The following authorities show that it would not: *Railroad Co.* v. *Anderson,* 10 Bradw. 313; *Wyatt* v. *Railroad Co.* id. 289; *State* v. *Railroad Co.* 30 Vt. 108; *Railroad Co.* v. *Davis,* 23 Ind. 553; *Bell*

v. *Railroad Co.* 53 id. 57; *Turner* v. *Railroad Co.* 74 Mo. 603; *Rogers* v. *Railroad Co.* 12 Am. and Eng. Railroad Cases, 442; *Thurman* v. *Railroad Co.* 56 Ga. 376; *Hicks* v. *Railroad Co.* 62 Tex. 38; *Railroad Co.* v. *Ormund,* id. 274; *Metz* v. *Railroad Co.* 58 N. Y. 61.

To hold the several companies liable, jointly and severally, the evidence should have shown "some concert of action between" all of them, or concurrent neglect of a common duty resting on all. *Railway Co.* v. *Rolvink,* 31 Ill. App. 596.

The use of a common advertising name does not show such a concert of action or concurrent neglect of duty.

A new trial should have been granted on account of the newly discovered evidence. *Hupp* v. *McInturf,* 4 Bradw. 449.

The court should have given the instruction asked, directing a finding for the defendant. *Blanchard* v. *Railroad Co.* 126 Ill. 416; *Cothran* v. *Ellis,* 125 id. 496; *Poleman* v. *Johnson,* 84 id. 269; *Phillips* v. *Dickerson,* 85 id. 12.

Messrs. Brandt & Hoffmann, and Mr. J. S. Kennard, Jr., for the appellee.

Mr. Chief Justice Magruder delivered the opinion of the Court:

This is an action, brought by appellee as administratrix of her deceased husband, David Ross, to recover damages for his death, alleged to have been caused by the wrongful act and neglect of the appellant company, and of the Pennsylvania Company. The two companies were originally made defendants, but the court instructed the jury to find the Pennsylvania Company not guilty. The only plea, filed by the appellant, was the general issue. The verdict and judgment in the trial court were in favor of the appellee and against the appellant. That judgment has been affirmed by the Appellate Court, and the case is brought here by appeal from the latter Court.

The deceased was a brakeman or switchman, engaged in transferring a long train, consisting of some 64 or 65 freight

cars, from the tracks and yard of the Wisconsin Central line across a portion of railroad track, known as the Panhandle "Y," to the tracks of the Stock Yard Company's railroad. The Panhandle "Y" tracks appear to have been owned on December 28, 1886, by the Chicago, St. Louis and Pittsburgh Railroad Company. By some kind of arrangement with the latter company, the trains or cars of the Wisconsin Central Line were entitled to pass from its tracks to the tracks of the Stock Yard Company's Railroad over the Panhandle "Y." While the deceased was so engaged in transferring said train on the day last named, one of the cars of said train, on which he stood, leaped from the track and fell over, throwing the deceased to the ground. The cars following in the rear passed over his body, killing him instantly.

At the close of the testimony on both sides, the defendant, the Wisconsin Central Railroad Company, moved the Court to instruct the jury to find for it, the said defendant. It also asked the court to give to the jury a written instruction to the same effect, which instruction was refused.

There was enough evidence to justify the submission of the question of defendant's liability to the jury. The evidence tended to show, that the deceased was employed by the defendant, or by the Wisconsin Central Line; that the Wisconsin Central Line was not a corporation, but was a name given to an association of five or six railroad corporations, having running and traffic arrangements with each other, and having some sort of an arrangement, under a lease, or contract, or otherwise, with the railroad company owning the tracks, called the Panhandle "Y," by which the trains and cars of the association were permitted to pass over said tracks; that this association of corporations advertised itself as the Wisconsin Central Line; that the appellant company was one of the corporations so associated under said name, as it is admitted to be by counsel for appellant in the following words used in their brief: "the evidence tended to show that the railroad of

appellant formed part of the route so advertised;" that the deceased was killed, while engaged in transferring a train of cars, belonging to the Wisconsin Central Line, over the Panhandle "Y" as the servant and employee of the corporations forming that association; and that the cause of his death was the defective character of the rails and ties upon the track of the Panhandle "Y," over which the train in question was passing. Upon all these questions of fact the judgment of the Appellate Court, affirming that of the Circuit Court, is final and conclusive so far as we are concerned.

Under the facts thus stated, was the appellant liable for the death of the appellee's intestate?

It is claimed, that the appellant is not liable because the defective tracks did not belong either to the appellant, or to the Wisconsin Central Line. But the following propositions are well established both by reason and authority: a railroad company is responsible for accidents caused by defective tracks; it is bound to exercise due care to safely carry the passengers and property entrusted to it; it is, therefore, its duty to see to it, that the road, which it uses for such transportation, is safe and in good repair, whether such road is owned by it or not; if it uses the track of another company for such purpose, it is liable for damages to its passengers or freight by reason of defects in the road of such other company so used by it; this rule applies as between the railroad company and its employees. There is no evidence that the deceased had any knowledge of the defects in the track. Where the employee of a railroad company is directed to use the road of another company in the business of his employer, he has the right to treat such road as the road of the company employing him; and every railroad company, whose employees use the road of another company under its direction or for its benefit, owes it as a duty to such employees to see that such road is not in a condition which will unnecessarily endanger their lives or limbs. The rule is thus stated in Wood's Law

of Master and Servant (2 ed. sec. 357, page 735): "A railway company running its trains over the track of another railway is liable to its servants for defects therein, when it would be liable if the injury resulted from defects on its own track." To the same effect are *Stetler* v. *The Chicago & Northwestern Railway Co.* 46 Wis. 497, and cases there cited; *The Ill. Cen. R. R. Co.* v. *Kanouse,* 39 Ill. 272; *Elmer* v. *Locke,* 135 Mass. 575; *Snow* v. *Housatonic Railroad,* 8 Allen, 441. We are, therefore, of the opinion that the liability of the appellant cannot be defeated upon the ground, that the road in use at the time of the accident did not belong to appellant, or to the Wisconsin Central Line.

Equally untenable is the objection, that the deceased was not in the particular service of the appellant alone. What was the precise nature of the association of the corporations operating under the name of the Wisconsin Central Line does not appear. But it appears that the deceased, and several of the witnesses who testified, were employed by that association. The corporations acting together paid the wages of the deceased. Such wages constituted a part of the expense of operating their roads. They were, therefore, sharing the expenses of such operation, whether they shared the profits or not. They owed to each of their employees the duty of seeing that the track, which they required him to use, was safe and in good repair. The track in question was used for their joint benefit and in their joint service. They were, therefore, jointly liable for any injury to their employees resulting from a defective track, for the use of which they were jointly responsible; and they were also severally liable. "If several persons are jointly bound to perform a duty, they are jointly and severally liable for omitting to perform or for performing negligently." (*Consolidated Ice Co.* v. *Keifer,* 134 Ill. 481.)

Partners are jointly and severally liable for torts committed in the course of the partnership business. (Story on Partnership,—7 ed.—secs. 166, 167.) It is true that, in this case, the

suit is brought against one member only of the association, and not against all; but all the members need not be sued, though all may be jointly liable. The law treats all torts as several as well as joint. The injured party may, at his election, sue all the partners, or any one or more of them, for the tort. (Story on Part.—7 ed.—sec. 167). The rule is not confined to partnerships, but extends to all cases of joint torts at the common law, whether positive or constructive. (Idem.) (*Connolly* v. *Davidson*, 15 Minn. 519; *Champion* v. *Bostwick*, 18 Wend. 174; *Wood* v. *Luscomb*, 23 Wis. 287.) In *W., St. L. & P. Ry. Co.* v. *Shacklet, Admx.* 105 Ill. 364, we said: "Considering the question, then, in the light of public policy, we are of opinion the public interests will be best subserved by adhering strictly to the long and well established principle, that, where one has received an actionable injury at the hands of two or more wrong-doers, all, however numerous, are severally liable to him for the full amount of damages occasioned by such injury, and the plaintiff in such case has his election to sue all jointly, or he may bring his separate action against each or any one of the wrong-doers."

. It is also claimed, that the road was operated by certain trustees for the first mortgage bondholders at the time the accident occurred, and that, therefore, the suit should not have been brought against the corporation itself, but against said trustees. It is not pretended, that the road was in the hands of a receiver, or that the trustees in question were appointed by or acting under any order of court. The evidence upon this subject is meagre. No trust deed executed by the corporation to secure the bondholders was produced, and there is nothing to show what its terms and conditions were, if it existed. The only testimony, that the trustees had possession of the road, consists of oral statements to that effect by some of the witnesses.

There is no evidence, that such trustees, if they were in possession, gave notice of any kind to third parties or to the

. employees of the company, that they were operating the road, or that they were operating it in their own names as trustees. The evidence tends to show, that, if they operated it at the time of the accident, they did so in the name of the corporation. If they were sued by the wrong name, they should have pleaded that fact. "Though a suit might be instituted against the trustees individually, by their own names, no objection is perceived why one cannot be maintained against them by the name they use." (*Wilkinson et al. Trustees* v. *Fleming*, 30 Ill. 353.)

A railroad company, which has voluntarily placed itself and its property and franchises in the hands of trustees to secure its debt to bondholders, cannot lie by, when sued for a tort which it claims to have been committed by such trustees, and shield both itself and the trustees from liability by concealing the fact that the trustees are operating the road, until the statute of limitations has barred the right of action. We do not wish to be understood as controverting the general doctrine, that a railroad company is not liable at common law, or under statutes imposing liability for injuries resulting in death, for the negligence of mortgagees who are operating the road under a possession taken and held adversely. (Pierce on Railroads, page 285; *State* v. *E. & N. A. Railway*, 67 Me. 479.) A mortgagor, out of possession and control of property real or personal, ought not to be liable for the acts of the mortgagee, who is in possession of such property, and has an independent and adverse control of it. But we are not disposed to recede from the position taken in the case of *Grand Tower Mfg. & Tr. Co.* v. *Ullman*, 89 Ill. 244, where the suit was held to have been properly brought against the company, rather than against the trustees. Under the facts in the case at bar, so far as they are disclosed by the record, the following language used in the *Ullman* case is precisely applicable: "It is also insisted, no action can be maintained against the corporation because the road was in possession of trustees for the

2—142 ILL.

bondholders. These trustees seem to have been exercising the same functions the corporation was formed to exercise. The character of the trust is not specifically shown by the proofs, but the fair inference would seem to be, that the trustees were the trustees of the corporation, of its own selection, as well as of the bondholders, and were running the road to earn money to be applied in payment of the debts of the corporation. In such case, the trustees must be regarded as the agents of the corporation, in so far as relates to the transaction of business with third persons."

The letters "W. C. L." were upon the two engines, which drew the train above referred to; and these letters are proven to have stood for the "Wisconsin Central Line." A number of the employees of that line have given their evidence in this case, and the tendency thereof, as well as of the rest of the evidence, is to the effect that the appellant company was a member of the association in question, and not that the trustees were members thereof.

Upon the motion for a new trial, the defendant filed an affidavit as to the discovery after the trial of a receipt, which it was claimed, could not be found during the trial. A new trial was asked upon the ground that such receipt was newly discovered evidence. It was as follows: "Duplicate. Wisconsin Central Line. Wisconsin Central Railroad. Milwaukee and Lake Winnebago Railroad (I. H. Stewart and E. H. Abbott, trustees and lessees). Wisconsin and Minnesota Railroad Company. Minnesota, St. Croix and Wisconsin Railroad Company. D. S. Wegg, Solicitor. $70.00. Chicago, February 1, 1887. Received from Wisconsin Central Associated Lines the sum of Seventy dollars in full of services of David Ross as foreman for December, 1887. Marcella H. Ross, Administratrix of Estate of David Ross, Decd." The fact that the receipt was given, the failure to find it, and its substance were testified to on the trial.

The evidence furnished by the receipt was merely cumulative. It simply strengthened what the proof on the trial tended to show, that the deceased was employed and paid by the associated companies, and that the defendant was one of said companies. Mrs. Ross had sworn, that her husband had been employed by the Wisconsin Central Railroad Company; and that his wages for December had been paid by that company. So far as the receipt was intended to impeach her, it furnished no ground for a new trial. It was natural enough, that, among the many names made use of, she should have failed to distinguish between the Wisconsin Central Line, and the Wisconsin Central Railroad Company.

We do not think that there was any error in not granting a new trial for the reasons stated in the affidavit.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*