## IOWA SOUTHERN UTILITIES CO. v. CASSILL, Mayor, et al.

### No. 9713.

Circuit Court of Appeals, Eighth Circuit.
March 5, 1934.

Donald Evans, of Des Moines, Iowa (Carr, Cox, Evans & Riley, of Des Moines, Iowa, on the brief), for appellant.

William L. Hassett, of Des Moines, Iowa (Poppenhusen, Johnston, Thompson & Cole, of Chicago, Ill., on the brief), for appellees.

Before GARDNER and WOODROUGH, Circuit Judges, and MARTINEAU, District Judge.

GARDNER, Circuit Judge.

Appellant, as plaintiff below, brought this suit to enjoin the defendants, constituting the town of Lenox, Iowa, the mayor and councilmen thereof, and Fairbanks, Morse & Co. as contractor, from carrying out a contract entered into between the town of Lenox, Iowa, and Fairbanks, Morse & Co., by the terms of which Fairbanks, Morse & Co. agreed to sell to the town materials, and to construct a plant for the generation and distribution of electrical energy. For the materials, machinery, equipment, and services involved in constructing a completed plant, the town agreed, in the manner provided in the contract, to pay appellant the sum of $71,600.

For convenience, the parties will be referred to as they were designated in the lower court.

Plaintiff is a public utility company, organized under the laws of Delaware, owning, operating, and maintaining an electric light and power plant in various communities in Iowa, including the town of Lenox, and is the owner of a franchise authorizing it to distribute and sell electrical energy to the citizens of Lenox. At the time the bill of complaint was filed, June 13, 1932, plaintiff's franchise or permit had an unexpired period of about ten years.

Plaintiff was and is the owner of property in the town of Lenox, and is, hence, a taxpayer therein. It bases its right to an injunction on the charge that the contract for the materials and services entering into the construction, maintenance, and operation of the plant by the municipality is illegal, in that it is violative of both statutory and constitutional provisions of the state of Iowa, and that plaintiff is entitled to protection, not as the holder of an exclusive franchise, but against unlawful competition.

The facts, aside from those admitted by the pleadings, were stipulated in writing, and the court in effect adopted the facts so stipulated as its findings in the case, and from such facts concluded that the plaintiff was not entitled to the relief demanded, and entered decree dismissing the suit on its merits. From the decree so entered, plaintiff has appealed, urging that: (1) The contract is void because it violates the terms of the statute pursuant to which it was executed; and (2) the contract is void because it constitutes a debt and is in excess of the constitutional debt limitation.

The right of plaintiff to maintain the suit as the owner of a permit or franchise to distribute electrical energy to the inhabitants of the town of Lenox, and hence, entitled to protection against unlawful competition, is not subject to controversy. City of Campbell, Mo., v. Arkansas-Missouri Power Co. (C. C. A. 8) 55 F.(2d) 560; Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483.

The power of the defendant city to enter into the contract is bottomed on the following statutes:

Section 6128, Code of Iowa 1931: "They (cities and towns) may grant to individuals or private corporations the authority to erect and maintain such works or plants for a term of not more than twenty-five years, and may renew, amend, or extend the terms of the grant; but no exclusive franchise shall be granted, amended, extended, or renewed."

Section 6134-d1, Code of Iowa 1931: "Contract authorized. They shall have power to pay for any such plant, improvement or extension thereof out of the past earnings of the plant and/or out of the future earnings and/or may contract for the payment of all or part of the cost of such plant, improvement or extension out of the future earnings from such plant, and may secure such contract by the pledge of the property purchased and the net earnings of the plant."

Section 6134-d2, Code of Iowa 1931: "Nature and requirements of contract. Such contract shall not constitute a general obligation or be payable in any manner by taxation. Such contract shall specify the maximum rate that may be charged the consumers, including the municipality, and the city shall not increase or fix any rate beyond such maximum. Under no circumstances shall the city be in any manner liable by reason of the failure of the net earnings being sufficient for the payments provided in the contract. Such contract shall also specify the rate of interest to be charged."

These statutes were passed in 1931. Prior to their adoption, the Supreme Court of Iowa had held that municipalities, under the general power vested in them by the then existing statutes, had no authority to enter into a contract pledging the future earnings of the plant itself for the payment of the purchase price. Van Eaton v. Sidney, 211 Iowa, 986, 231 N. W. 475, 71 A. L. R. 820. Apparently these statutes were adopted for the purpose of granting such authority.

The contract here involved contains the following provision: "The said Municipality upon its part agrees to purchase said machinery, equipment and materials for the price and upon the terms above set out, and to pay any balance of said purchase price not paid in cash as above set out solely out of the net earnings of the Electric Light and Power Plant of said municipality, it being understood and agreed that such agreement to pay the purchase price out of the net earnings of the plant shall not constitute a general obligation of said Municipality or be payable in any manner or under any circumstances by taxation but shall be payable solely out of the net earnings of said electric light and power plant. And it is further understood and agreed that under no circumstances shall the said Municipality be in any manner liable by reason of the failure of the net earnings being sufficient to meet the payments provided for in this contract."

It is conceded that if this contract creates a debt, then it is void, as the debt thus created would be in excess of the constitutional limitation of indebtedness of the town of Lenox (Const. Iowa, art. 11, § 3).

It is contended by plaintiff that the contract is void, even though it may not create an indebtedness, and this contention is based upon a provision in the contract which defines "net earnings" as "the balance of the gross receipts from the electric light and power plant of said municipality after the payment solely of legitimate and necessary expenses of the operation and maintenance of said plant." It is urged that the term "net earnings" has a definite legal, as well as a practical, significance, and that properly defined, it constitutes the balance of receipts remaining after deducting all proper operating and maintenance expenses and charges, and in addition thereto a proper charge for depreciation of the plant and materials which may become worn out or obsolete. In support of this contention it is pointed out that it was stipulated in the lower court that it is generally recognized by accountants, engineers, and businessmen, that a charge for depreciation of physical property should be made for the purpose of providing a fund to replace facilities that may be retired on account of use and obsolescence. In the case of an electric light plant of the kind specified in the contract here involved, it is stipulated that a charge of 5 per cent. of the original cost would be appropriate. It is, therefore, urged that the contract pledges more than the net earnings properly defined,

and hence is not authorized by the Iowa statutes, because it creates an indebtedness in excess of the constitutional limitation.

Numerous authorities are cited as supporting plaintiff's contention. An examination of these authorities discloses that the issue before the court was either one of rates or taxation. They do not purport to deal with the expression "net earnings." The inquiry was as to net earnings from invested capital, and, generally, in calculating net earnings from invested capital, an allowance for depreciation of the plant in which the capital is invested should be made. Thus, in Knoxville v. Knoxville Water Company, 212 U. S. 1, 29 S. Ct. 148, 152, 53 L. Ed. 371, it is said: "A water plant, with all its additions, begins to depreciate in value from the moment of its use. Before coming to the question of profit at all the company is entitled to earn a sufficient sum annually to provide not only for current repairs, but for making good the depreciation and replacing the parts of the property when they come to the end of their life."

And in United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 610, 71 L. Ed. 1054, also cited by plaintiff, the court said: "The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it."

From these and similar authorities, it is earnestly contended that the term "net earnings," as used in the statute under consideration, must be construed to mean the balance remaining after paying the expenses of operation and maintenance, plus depreciation.

■ It must be borne in mind that the municipality has no capital invested in this plant, but the capital invested has been furnished by the vendor, Fairbanks, Morse & Co. In construing the statute, we should give effect to the legislative intent, if that is ascertainable. The plan for acquisition of a utility plant by the municipality, authorized by the Iowa statutes, involved no capital investment by the town. All the earnings of

the plant, above the cost of operation and maintenance, are net earnings to the town because it has no capital invested to be compensated or kept up by estimated depreciation. Title to the property is retained in the vendor and vests in the town when all the purchase price has been paid. At that time, and not until that time, does the property become that of the municipality. So that the vendor contracts to vest title in the municipality, not of a new plant, but of a plant which has been used, but which has been properly maintained. There is, therefore, no occasion, so far as the municipality is concerned, for setting aside a fund to cover depreciation. If such fund were set aside, it would belong to the municipality, and when its plant shall have been paid for out of the net earnings, it would then not only own a plant but would have at its disposal a fund covering depreciation. The vendor would have no beneficial interest in such a fund, and its creation could have no bearing upon the rights of the parties under this contract.

But even where there is a question of invested capital involved, it is not universally held that the public utility is entitled to set aside a fund covering depreciation among its annual charges. Thus, the Supreme Court of Iowa, in Cedar Rapids Water Co. v. City of Cedar Rapids, 118 Iowa, 234, 91 N. W. 1081, 1091, refused such an allowance as an annual charge. The court said: "So, also, we may say we see no reason why plaintiff, in addition to operating expenses, repairs, and other ordinary charges, should be allowed to reduce the apparent profits by deductions for a restoration or rebuilding fund. The setting aside of such a fund may be good business policy, and, if the company sees fit to devote a portion of its profits to that purpose (though, as we understand the record, no such fund has yet been created), no one can complain; but it is in no just sense a charge affecting the net earnings of the works."

This decision had been handed down long before the statutes under consideration were passed. We cannot, therefore, conclude that the Legislature had in mind, in passing the statutes, the definition of "net earnings" for which plaintiff contends.

Not only had the Supreme Court of Iowa, but other courts as well, recognized as a proper definition of "net earnings" that embodied in the contract challenged in this case. We refer to a few of these authorities by way of illustration.

In Connolly v. Davidson, 15 Minn. 519 (Gil. 428), 2 Am. Rep. 154, the court said: "The word 'profits,' must be taken, as it is to be presumed that it would be taken by the jury, to mean the excess of receipts over expenditures; that is, *net earnings;* such being its usual, ordinary and correct meaning." (Italics supplied.)

The Supreme Court of California, in People v. San Francisco Savings Union, 72 Cal. 199, 13 P. 498, 499, cites with approval Connolly v. Davidson, supra, and in the course of the opinion it is said: "What are the surplus profits arising from the business of the corporation? The word 'profits' signifies an excess of the value of returns over the value of advances. The excess of receipts over expenditures; that is, *net earnings.*" (Italics supplied.)

In the course of the opinion, the court quotes with approval from St. John v. Erie R. Co., Fed. Cas. No. 12,226, 10 Blatchf. 271, as follows: "'Net earnings are properly the gross receipts, less the expense of operating the road, or other business of the corporation. Interest on debts is paid out of what thus remains; that is, out of the *net earnings.*'" (Italics supplied.)

In Vermont & C. R. Co. v. Vermont Cent. R. Co., 50 Vt. 500, it is said that: "'Net earnings' means what is left after paying the legitimate cost and expense of making earnings by use of the property."

So, in Hazeltine v. Belfast & M. L. R. Co., 79 Me. 411, 10 A. 328, 331, 1 Am. St. Rep. 330, the Supreme Court of Maine held that "net earnings" means "the gross receipts, less the expenses of operating the road to earn such receipts."

And, in Clark v. Vandalia R. Co., 172 Ind. 409, 86 N. E. 851, 854, the Supreme Court of Indiana held that: "Earnings signify money; net earnings, the sum received in excess of operating expenses."

In Bank of Morgan v. Reid, 27 Ga. App. 123, 107 S. E. 555, 556, the Court of Appeals of Georgia held that "net earnings" means "the difference between the present value of all the corporate assets and the amount of all losses, expenses, other charges and liabilities, including the capital stock."

In Kansas City S. R. Co. v. United States, 231 U. S. 423, 34 S. Ct. 125, 132, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1, the Supreme Court of the United States, in considering an attack upon the Hepburn Act (34 Stat. 584), and particularly the provisions providing for a system of accounting by common carriers, had occasion to refer to the

term "net earnings" and pointed out the distinction between the property or capital accounts and the operating accounts. In the course of the opinion it is said: " * * * the operating accounts, designed to show, on the one side, gross receipts or gross earnings for the year, and on the other side, the expenditures involved in producing those gross earnings and in maintaining the property, the balance being the *net earnings.*" (Italics supplied.)

We cannot say that the Legislature necessarily intended the term "net earnings," as used in the statute, to mean the balance of receipts remaining after deduction of not only operating and maintenance expenses, but in addition thereto a charge for depreciation. The words in bookkeeping language mean a balance, or what remains after something has been deducted. What the deduction shall be, or what it shall include, must be determined from the occasion for the use of the words, or from the context, and we think the definition contained in the contract does no violence to the statute.

It remains to consider whether the contract created a debt. It is well established by the authorities that if the contract in fact pledges only net earnings within the meaning of the quoted statute, then it does not create a "debt." Wyatt v. Town of Manning (Iowa) 250 N. W. 141, 145; Franklin Trust Co. v. City of Loveland, Colo. (C. C. A. 8) 3 F.(2d) 114, 116; City of Campbell, Mo., v. Arkansas-Missouri Power Co. (C. C. A. 8) 55 F.(2d) 560; Shields v. Loveland, 74 Colo. 27, 218 P. 913; Carr v. Fenstermacher, 119 Neb. 172, 228 N. W. 114; Faulkner v. Seattle, 19 Wash. 320, 53 P. 365; Winston v. Spokane, 12 Wash. 524, 41 P. 888; Barnes v. Lehi, 74 Utah, 321, 279 P. 878; Kasch v. Miller, 104 Ohio St. 281, 135 N. E. 813; City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004.

In Wyatt v. Town of Manning, supra, in a well-considered opinion, the Supreme Court of Iowa, in construing a contract very similar in its terms to the one which we are considering, puts to rest plaintiff's contention that a debt was created by this contract. In the course of the opinion it is said: "As previously indicated, the question to be determined here is whether the cost of the electric plant under consideration is a debt within the contemplation of the constitutional and statutory prohibition. If it is such a debt, it exceeds the limitation. According to section 6134-d2, the cost of the electric plant

financed under section 6134-d1 shall not constitute a general obligation or be payable in any manner by taxation, or in any other way except through the earnings of the plant."

After referring to and quoting from one of its prior decisions, the court further says:

"We there held that the limited obligation was not an indebtedness within the meaning of the Constitution and statutes fixing the limit of indebtedness for municipalities. That is true because the legislation expressly provided that the cost of the waterworks should not be a general indebtedness. * * *

"The conclusion just reached is not in any way modified by the fact that the city may have a future liability in the case at bar because of a possible tort growing out of the transaction. Fort Dodge Electric Light & Power Co. v. City of Fort Lodge et al., 115 Iowa, 568, 89 N. W. 7. If, then, under the legislation involved in the case of Swanson v. City of Ottumwa (118 Iowa, 161, 91 N. W. 1048, 59 L. R. A. 620), supra, the limited obligation was not one within the constitutional and statutory limitations because the indebtedness was not general, likewise in the case at bar the cost of the electric light and power plant under sections 6134-d1 and 6134-d2 of the Code is not an indebtedness under the constitutional or statutory limitation. This is true because the indebtedness contemplated by sections 6134-d1 and 6134-d2 is expressly declared not to constitute a general obligation or be payable in any manner from taxation, or in any other method, except that provided in said sections. Also, section 6134-d2 expressly provides that under no circumstances shall the city in any manner be liable by reason of the failure of the net earnings being sufficient for the payment provided in the contract. No taxpayer, therefore, could ever be called upon to pay taxes to discharge the obligation. Neither could the obligee call upon the city to discharge such obligation, except in the limited manner provided. * * * By using the pledge warrants contemplated in the case at bar, the city of Manning does not extend the obligation beyond that limited by sections 6134-d1 and 6134-d2 of the 1931 Code. Therefore, the cost of the electric plant under consideration is not within the constitutional or statutory limitation of indebtedness."

As said by us in Franklin Trust Co. v. City of Loveland, Colo., supra, quoting with approval from Shields v. City of Loveland: "'The public can never be overburdened by

that which it is under no obligation to discharge, nor can the city become bankrupt by what it does not have to pay.' "

■ We conclude, therefore, that the contract does not create a debt within the meaning of the constitutional inhibition, unless, as contended by plaintiff, there is devoted to the earning of this net income substantial property of the municipality. In support of this argument it is said that the plant constructed by the vendor is located upon a site owned by the municipality. This site is a small portion of a town lot forty feet by fifty feet in dimensions, formerly unoccupied and unused, and from which the town has never received any income, and which was acquired by the town without consideration. We think the short answer to this contention is that the contract does not obligate the town to furnish a site for this plant sold it by the Fairbanks, Morse & Co., nor does it pledge such site, nor the net earnings therefrom. The burden of proof was upon plaintiff, and we cannot presume, in the absence of proof, that the furnishing of this site was a part of the consideration for the contract. In other words, it cannot be said from this record that the plant was placed upon this site pursuant to the contract which is here assailed. Neither would there seem to be any basis for the contention that the property has any substantial value. De minimis non curat lex.

The judgment appealed from is therefore affirmed.