## CLARK, AUDITOR, ET AL. v. VANDALIA RAILROAD COMPANY ET AL.

[No. 20,998. Filed January 6, 1909. Rehearing denied June 3, 1909.]

1. CONSTITUTIONAL LAW.—*Taxation.*—*Uniformity.*—The Constitution (Art. 10, §1) requires that the legislature shall provide for a uniform and equal assessment and rate of taxation. p. 411.

2. TAXATION.—*Assessment.*—*Classifications.*—The legislature may establish classifications of property for assessment for taxation. p. 411.

3. TAXATION.—*Railroads.*—The object of the statutes relating to the taxation of railroad companies is to distribute the taxes levied to the different counties through which the roads pass, as equitably as possible. pp. 411, 417.

4. TAXATION.—*Assessments.*—*Methods.*—*Legislative Discretion.*—The method of assessing and collecting taxes is discretionary with the legislature. p. 413.

5. TAXATION.—*Railroads.*—The power to assess railroad companies is vested solely in the State Board of Tax Commissioners, and it is given full power to investigate the companies' affairs in order to determine their value. p. 413.

6. TAXATION.—*Railroads.*—*Money.*—Money, as such, is not assessable against a railroad company, or other corporation, the assessment of the capital stock thereof presumably including all the money belonging to the company. p. 415.

7. TAXATION.—*Assessment.*—*Collateral Attack.*—The action of the State Board of Tax Commissioners cannot be collaterally attacked, in the absence of fraud. p. 419.

8. TAXATION.—*Foreign Corporation.*—*Money in Hands of Receiver or Trustee.*—Money belonging to a foreign railroad company, but in the custody of a receiver of another railroad company in this State, is subject to taxation, but the receiver's company is not liable for the taxes due thereon. p. 419.

From Superior Court of Marion County (69,197); *Vinson Carter*, Judge.

Suit by the Vandalia Railroad Company against Cyrus J. Clark, as auditor of Marion county, and others. From a decree for plaintiff, defendants Clark and a part of the others appeal. *Affirmed.*

*Merrill Moores, Morton S. Hawkins, Walter Myers, John Ogden* and *Holtzman & Coleman,* for appellants.

*Samuel O. Pickens* and *John G. Williams,* for appellee Vandalia Railroad Company.

*James E. Truesdale* and *Holtzman & Coleman,* for other appellees.

HADLEY, J.—In 1904, the taxing officers of Vigo and Marion counties made certain assessments for taxes against the Terre Haute & Indianapolis Railroad Company and Volney T. Malott, receiver of said company; said assessments being made on moneys in the possession of said receivers, including special funds arising from leases or operating contracts with other railroad companies located in Indiana and Illinois, the same being assessed as omitted property for the years 1889 to 1904, inclusive, and as belonging to the Terre Haute & Indianapolis Railroad Company. After the making of said assessments the Terre Haute & Indianapolis Railroad Company consolidated with all of said leased and other companies, thereby forming the Vandalia Railroad Company, one of the appellees herein, and by virtue of the consolidating contract said appellee company took over and became the owner of all the property of the Terre Haute & Indianapolis Railroad Company. The tax collection officers of Vigo and Marion counties are attempting to collect said omitted taxes by levy on the property formerly owned by the Terre Haute & Indianapolis Railroad Company. The appellee company brings this suit to enjoin such collection of taxes, and claims that under the railroad taxing laws of Indiana money is not taxable as a distinct and specific article of property, but must be, under the statute, considered by the assessing officers as but a constituent element of value of that part of railroad property which, from its very nature, should be taxed as a unit, and that the special assessments complained of are void, particularly those pertaining to moneys belonging to the Terre Haute & Indianapolis Rail-

road Company, or its lessor companies, located in the State of Indiana. The trial court adopted the view urged by appellee company, and we have not been convinced that the conclusion reached was erroneous.

Our Constitution (Art. 10, §1) directs that the General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as will secure a just valuation of all property for taxation purposes. From the great variety of property which should bear the burden of taxation, the multiplicity of uses to which it is put, and the diverse character of owners, our legislative body, for more than half a century, has recognized the necessity for different methods for the assessment of different classes of property, to secure a just and uniform valuation. In its first enactment under the new Constitution, in 1852 (Acts 1852, p. 44, 1 Gavin & Hord, 68), for the valuation and assessment of property for taxation, the legislative intent to differentiate the valuation and appraisement of railroad property for taxation from that of individuals is evident. . Section ten makes it the duty of all persons of full age, of sound mind, and not married women, to list all their property, and specifically requires them to list all moneys in their possession, or on deposit, and all credits due and owing to them. Section thirty-two of the act classes railroads with other public-service corporations, such as plank and turnpike roads, telegraph and bridge companies, and requires the proper accounting officers of the company to furnish, under oath, to the auditor of the county where its principal office is situated, a list of the capital stock of the company, its value, and a statement dividing all the capital stock among the several counties through which, or into which, the road runs. The details as to railroads are meager, but it is apparent that the effort was to provide a system by which all railroad property of every kind should be valued as a unit, and the valuation distributed equitably

along the line for taxation. It is also important to note that, while the act of 1852 is specific in more than one section that all moneys and credits belonging to private persons shall be given in and taxed, there is an entire absence of mention of money and credits belonging to railroad companies. A further significant fact is furnished by the amendatory act of 1858 (Acts 1858, p. 24), which provides that railroad companies may omit from their lists all lands owned by the company that are not used in operating the road, and declaring that such lands should be assessed and taxed in the counties where situate, and in the same manner as lands belonging to private persons. This provision is equivalent to an affirmative declaration that all other property of railroads should be assessed and taxed in a manner different from private persons.

It was not hard to see, even in 1852, that the transient, mobile character of locomotives and cars used in transacting the business of railroads, the company's earnings, its capital stock, its franchise—in fact, all the company's belongings, except its track and real estate, having a situs as much in one county occupied by the road as in another, here today and there to-morrow, in this State or out of it, as business need requires—could not be assessed under the general taxing laws as located in any county, and could not have the principal values accredited to the county containing the home office, without great injustice to other counties traversed by the railroad. From that early date in the history of railroads, the purpose then adopted, of devising a scheme for the taxation of railroads that would secure not only a fair valuation of the whole property, but an equitable distribution of that value among the several counties affected, has threaded through every taxation statute passed from that day to this, and, accordingly, the act of 1891 (Acts 1891, p. 199), which governs in this case, except for the years 1889 and 1890, differs from the old law only in giving fuller and more com-

plete details in matters of classification and assessment. In these latter respects the evolution has proceeded, with the rapid multiplication of railroads, through Acts of 1859, p. 3, Acts of 1865 (s. s.), p. 121, Acts of 1872 (s. s.), p. 57, §§6269-6521 R. S. 1881, and Acts 1891, *supra.* It was found necessary, in 1872, to place railroads in a class by themselves, and there was then adopted, and has since been maintained, a more perfect system for listing and assessing such property, complete within itself, and drawing support from no other statute.

The method best calculated to secure equality and uniformity in assessment and taxation is left to the judgment of the legislature, and the decision of that body must

4. be followed by all taxing officers. The legislature, in the exercise of its power, has conferred upon the State Board of Tax Commissioners jurisdiction to assess the unit property of railroads under two heads, namely,

5. "railroad track" and "rolling stock," and has given the board power, if not satisfied with the information contained in the reports and schedule submitted by the companies, touching the value of their property, to send for persons and papers, and make a thorough investigation of its own. The statute provides that the "right of way, including the superstructures, main, side or second track and turnouts, turntable, telegraph poles, wires, instruments and other appliances, and the stations and improvements of the railroad company on such right of way (excepting machinery, stationary engines and other fixtures, which shall be considered personal property) shall be held to be real estate for the purpose of taxation, and denominated 'railroad track,' and shall be so listed and valued." §10238 Burns 1908, Acts 1891, pp. 199, 229, §78.

"The value of 'railroad track' shall be listed and taxed in the several counties, townships, cities or towns in the proportion that the length of the main track in such county, township, city or town bears to the whole length of the road

in· this State, except the value of the side or second track, and all the turnouts and all station houses, depots, machine shops or other buildings belonging to the road, which shall be taxed in the county, township, city or town in which the same are located.'' §10239 Burns 1908, Acts 1891, pp. 199, 229, §79. ''The movable property belonging to a railroad company shall be held to be personal property, and denominated, for the purpose of taxation, 'rolling stock.' '' §10240 Burns 1908, Acts 1891, pp. 199, 229, §80. The taxable value of the rolling stock as listed shall be distributed and taxed in the several counties, and in the same way as the property denominated ''railroad track,'' except fixed personal property, not specifically taxed, including tools, raw material, machinery, etc., shall be listed and taxed where located. §8499 Burns 1901, Acts 1891, pp. 199, 230, §81.

In order to furnish the state board a basis for ascertaining the value of this unit property, railroad companies are, by the statute, required to file with the Auditor of State, who in turn is required to lay the same before the State Board of Tax Commissioners, verified statements or lists, on forms prescribed by the board, showing, as to the property denominated ''railroad track,'' the length of the main and sidetracks, and turnouts; the proportion in each county and township, and the total in the State. Showing, as to the property denominated ''rolling stock,'' whether owned or hired; the number of ties in track per mile; the weight of iron or steel per yard in the main and side-tracks; the joints used in the track; the ballasting of the road, whether gravel, stone or dirt; the number and quality of buildings; the time the rails have been in use and the road has been built; the amount of capital stock and number of shares; the amount of capital stock paid up; the market value, or, if no market value, then the actual value of the shares of stock; the total amount of all indebtedness, except for operating expenses, and the total listed valuation of all the company's tangible property within the State. §10245 Burns

1908, Acts 1891, pp. 199, 231, §85. If the list, as prescribed by the statute, shall not furnish the board with satisfactory information, it has the power to seek further knowledge by compelling the production of books, papers and records and attendance of witnesses. §10305 Burns 1908, Acts 1891, pp. 199, 256, §137. And if the board finds the schedules, as required by law, inadequate to bring out a full disclosure of all taxable property and values, such board has authority to add to the statutory interrogatories submitted to the company whatever it deems proper and effective. §10290 Burns 1908, Acts 1891, pp. 199, 250, §120. The statute further provides that when the blanks and forms prepared by the State Board of Tax Commissioners shall be acted upon by the railroad company, and transmitted to the Auditor of State, the latter shall lay such statement, or schedule, before the board at its annual meeting "and said board shall assess such property in the manner hereinafter provided." §10247 Burns 1908, Acts 1891, pp. 199, 232, §87. The manner referred to is set forth in these words: "Said board shall also assess the railroad property, denominated in this act as 'railroad track' and 'rolling stock,' at its true cash value, and said board is hereby given the power and authority, by committee or otherwise, to examine persons or papers. The amount so determined and assessed shall be certified by the Auditor of State to the county auditors of the proper counties. The county auditor shall, in like manner, distribute the value so certified to him by the Auditor of State to the several townships, cities and towns in his county, entitled to a proportionate value of such railroad track and rolling stock." §10305, *supra.*

The procedure in the assessment of railroad property for taxation, as provided by later statutes and supplemented by assessing officers, is full and complete, yet in all the 6. taxing systems that have been evolved by the General Assembly, and the many changes and modifications that have been made therein by way of amendment since

1852, the listing of money as a separate and distinct item of taxable value, so far as the books show, has not even been suggested. It could not have been an oversight. In all cases where money on hand, or on deposit, is to be taxed, as in the case of private persons, the inquiry for the amount occupies a prominent place in tax lists. When it is entirely omitted from a tax list by both the statute and the officers who have imposed upon them the duty of prescribing all proper and necessary forms, its absence is significant. Another fact worthy of consideration is that where the capital stock of corporations is to be taxed, or where capital stock is to be considered in fixing taxable value, without exception, so far as we have noted, there is no mention of money on hand, or on deposit, as a separate item to be listed. In the assessment of incorporated banks, the market value of the capital stock, less the value of real estate and tangible property, is the taxable value. No one ever thought of taxing the money in the bank as a separate item, or in addition to the value of the capital stock, since it takes the money belonging to the bank, associated with every other element of value, to create the market value of the stock. §10210 Burns 1908, Acts 1907, p. 624, §3. The taxing of foreign insurance companies is based on gross receipts, less gross losses paid; and not on the amount of moneys on hand or on deposit on any particular day. §10216 Burns 1908, Acts 1891, pp. 199, 222, §67. Telegraph, telephone, express, sleeping-car and pipe-line companies, whether organized in this State or another, are all assessed on the value of their capital stock; that assessable value being ascertained from a consideration of all the belongings of the company as exhibited on schedules and lists directed by the statute. In none of these schedules and lists is the item of money mentioned. §§10217, 10219-10222 Burns 1908, Acts 1893, p. 374, §§1-3, Acts 1901, p. 87, §§1, 2. The same is true in the taxation of water-works, gas, manufacturing, mining, gravel and turnpike roads, savings

banks, insurance and other corporations organized under the laws of this state. What is sought against such corporate bodies is the unit value of the capital stock, less the real estate and localized tangible property. The apparent policy has been to distribute the amount of the assessment for taxation against transportation companies, as to all property that has no local situs, ratably to all the counties and smaller municipalities occupied by the railroad. *Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 543, 18 L. R. A. 729. This is the only equitable and efficient method. Money is like rolling stock. It comes and goes every day, at every important station along the line. The principal sum may, on taxing day, be found on deposit in a single county where the rate is lowest, and that county reap the full benefit of the taxes, to the exclusion of the other counties that assisted in earning it. Besides, money is kept under cover, and is of a character to be easily shifted from place to place, or from state to state, to meet the exigencies of taxation. Therefore, to avoid unfairness, and to prevent the escape of taxable property, the present method, of requiring the state board, in the assessment of railroad property, to take into consideration the value of the company's capital stock, was adopted.

It is not provided, nor intended, that the stock value shall be conclusive as to the taxable value, as is the case with some other corporations, but the selling value of shares, which represent so many units of value in the whole of the corporate property, as an active, operating railroad, must be accepted as one of the highest tests of real value of the whole. But under the assessment scheme in this State, the board cannot stop here, but must consider the market value of such shares, along with the general character of every kind and class of assets, including money, that affects the stock value, whether located in one, or a dozen, counties. We shall call further attention to some of the things which the law re-

quires shall be spread before the taxing board when the assessment is made: The amount of the capital stock, and number of shares; the amount of capital stock paid up; the market value, or, if no market value, then the actual value of shares; the total listed valuation of all the company's tangible property in the State; the total amount of indebtedness, except for operating expense; amount of current operating expenses; amount of mortgage bonds; annual gross earnings of entire road; annual net earnings of entire road; annual gross earnings of miles of road within the State; average amount of net earnings per mile over the entire line. Earnings signify money; net earnings, the sum received in excess of operating expenses. And whether the sum be much or little, it goes far to exemplify the actual value of the corporate property. When surplus earnings are considered by the board to enhance the value of the capital stock for taxation, as they must be, to reassess and retax the same as money on hand, or on deposit, is double taxation, pure and simple, and we can see no difference in principle whether such surplus earnings have been disbursed as dividends to the stockholders, applied on corporate indebtedness, expended for betterments, or deposited in bank.

It, therefore, seems plain to us that it has been the intention of the legislature from the first, and has been so construed continuously by our taxing officers, that the taxable value of railroad property shall be ascertained and distributed to the municipalities occupied, in the manner pointed out, and that such procedure and such valuation shall and does include all the property of the company, real and personal, under the respective heads of "railway track" and "rolling stock," except the local real estate, outside that denominated "railroad track," as designated in §10239, *supra,* and except, further, all personal property under the head of "rolling stock," but that which has a fixed location and is specifically excepted by §8499, *supra.* Hence it was the duty

of the State Board of Tax Commissioners, in assessing the railroad property of the Terre Haute & Indianapolis Railroad Company, and resident lessor companies for the years aforesaid, to take into consideration their moneys on hand, or on deposit, at the several tax accruing dates. We cannot inquire into the evidence upon which the board acted. It

7. is presumed to have discharged its duty, and, in the absence of fraud, its final action is conclusive as to the assessment against corporations involved in this case for the years 1889 to 1904, inclusive. *Cleveland, etc., R. Co.* v. *Backus, supra.*

The court finds that the Terre Haute & Indianapolis Railroad Company and each of the resident lessor companies, for the years 1889 to 1896, and Malott, as receiver for the years 1897 to 1904, inclusive, within the time prescribed by law made returns of their property for taxation to the state and county auditors, on forms and schedules furnished first by the state board of equalization, and afterwards by the State Board of Tax Commissioners, and that all the taxes assessed against the companies and against said receiver, in the counties of Marion and Vigo, for all of said years, except the taxes in controversy, were fully paid at the times they became due. This finding should have ended the case.

We shall next consider the question as to the taxation of the special funds in the hands of the receiver. When Malott was appointed receiver of the Terre Haute &

8. Indianapolis Railroad Company, said company was operating certain leased lines of the following companies: The St. Louis, Vandalia & Terre Haute Railroad Company, and the Terre Haute & Peoria Railroad Company, both Illinois corporations, and the Terre Haute & Logansport Railroad Company, and the Indiana & Lake Michigan Railroad Company—both Indiana corporations. Under the contracts, the lessee company agreed to pay as rentals to each of the Illinois companies thirty per cent, and to each

of the Indiana companies twenty-five per cent of the gross earnings of the respective roads, and these rentals in the hands of the lessee company and in the hands of its receiver are the special funds involved.   These funds separate themselves into two classes, to wit:   (1) The funds set apart for the use and benefit of the leased lines located in the State of Indiana;   (2) The funds set apart for the use and benefit of the leased lines located in the state of Illinois.

The contracts under which the Terre Haute & Indianapolis Railroad Company was operating the other lines are not strictly leases, but operating contracts, and the per cents of gross earnings of the lessor companies became the property of said lessor companies as soon as they were earned, and especially was this true as soon as the amount was ascertained and set apart and deposited in separate, special deposits for said companies.   This was done by Malott, receiver, by order of the court, each and every month during the continuance of the receivership; and in equity these special funds, from the time they were set apart in a separate deposit, became and were the property of the lessor companies, respectively.   The fund could not be used to pay any of the creditors of the Terre Haute & Indianapolis Railroad Company.   It had no right whatever to the same.   In the case of *Terre Haute, etc., R. Co.* v. *Cox* (1900), 102 Fed. 825, 42 C. C. A. 654, a case which involved these same operating contracts, Judge Grosscup uses this language:   ''We are unable to see why, in equity   *   *   *   the thirty per cent is not, immediately upon receipt, already set apart and appropriated to the obligation of the Peoria company named in the lease.   *   *   *   The money,   *   *   *   it is true, is physically in the possession of the Indianapolis company, but equitably and beneficially becomes, the moment it is earned, the property of the Peoria company.''   As these special funds belong to the lessor companies, then it follows that the same were taken into consideration in fixing the

value of capital stock of those companies just as any other moneys belonging to them; and as to the Indiana lessor companies it must be held that such special funds were taken into consideration by the State Board of Tax Commissioners when it fixed the valuation of such companies for taxation, and are not, therefore, liable to be taxed specifically. The special funds set apart and belonging to the Illinois companies, however, present a different question. These funds, belonging to nonresident corporations, but being physically in this State in the possession of a trustee or receiver, are subject to taxation for state and county purposes only. §8421 Burns 1901, cl. 9, Acts 1897, p. 250, §10160 Burns 1908, cl. 9, Acts 1903, p. 49, §30.

The taxes, however, on such property of a nonresident, must be assessed against the owner, or in the name of the trustee, as trustee of such owner, and not against some third person. And the taxes must be collected from the property of such owner found in the possession of the agent, trustee or receiver, having possession of the same, and our statute (§10340 Burns 1908, Acts 1897, p. 226) makes ample provision for the collection of the tax out of the fund in the hands of the trustee or receiver. In this instance, however, the assessments of the special funds were not made against the owner, the Illinois companies, or against Volney T. Malott, as their receiver, holding funds for them in this State; but they were assessed against the Terre Haute & Indianapolis Railroad Company, and Volney T. Malott, receiver of the Terre Haute & Indianapolis Railroad Company, and the defendants are attempting to collect a tax against said special funds belonging to said Illinois companies, from the property of said Terre Haute & Indianapolis Railroad Company.

It goes without saying that a tax on money belonging to the St. Louis, Vandalia & Terre Haute Railroad Company, and money belonging to the Terre Haute & Peoria Railroad

Company, both nonresident corporations, should not be assessed and collected against the property of the Terre Haute & Indianapolis Railroad Company, an Indiana corporation. The fact that Volney T. Malott was receiver of the Indiana corporation, and had in his possession money that belonged to the Illinois corporations, furnished no reason whatever for taxing said money to the Indiana corporation. And the fact that since said assessment there has been a consolidation of the Terre Haute & Indianapolis Railroad Company and the St. Louis, Vandalia & Terre Haute Railroad Company, and other companies, now forming the plaintiff company, is immaterial. The attempt that was made to assess the money in said special funds to the Terre Haute & Indianapolis Railroad Company was void so far as the Terre Haute & Indianapolis Railroad Company was concerned. No attempt was at any time made to assess, or tax, the moneys in said special funds to the owners, the St. Louis, Vandalia & Terre Haute Railroad Company and the Terre Haute & Peoria Railroad Company, nor to Volney T. Malott, as receiver of said companies, and said Malott, as receiver of the Terre Haute & Indianapolis Railroad Company, on October 26, 1904, by order of the court of his appointment paid over to the respective Illinois corporations the full balance of said special funds. But whether a lien existed against all or any part of the special funds belonging to the Illinois corporations, that might have been effective under proper and timely proceedings, *in rem,* in no way affects the question we have under consideration, to wit, an attempt to collect said taxes by levy on property owned by the Terre Haute & Indianapolis Railroad Company, or its grantee, the Vandalia Railroad Company.

Judgment affirmed.