[Civ. No. 42973. Second Dist., Div. Three. Aug. 29, 1974.]

UNION OIL COMPANY OF CALIFORNIA,
Plaintiff and Respondent, v.
COUNTY OF VENTURA, Defendant and Appellant.

## COUNSEL

Dorothy L. Schechter, County Counsel, for Defendant and Appellant.

O'Melveny & Myers, Richard C. Bergen and Bennett W. Priest for Plaintiff and Respondent.

## OPINION

**COBEY, J.**—County of Ventura appeals from a judgment in favor of Union Oil Company of California refunding to it $83,061.14 in property taxes it paid under protest (together with the appropriate interest) for the tax years 1970-1971 and 1971-1972 upon its mineral rights within the roughly 31,000-acre Rancho Ex Mission. The trial court found and concluded that the county assessor over-assessed the mineral rights by unwarrantedly including in his roughly $80 per acre assessment of them approximately $58 per acre as the market value of the rights of surface entry. These rights constitute a portion of the mineral rights. (See Rev. & Tax.

Code, § 607.5.) The refund ordered by the trial court represents that portion of the taxes paid upon the assessments of the rights of surface entry.

Union owns only 1,010 acres of the surface of the Rancho. The greatest part of the Rancho is steep, rough mountainous land unfit for anything other than the open-range grazing of cattle. Aside from a few scattered orchards, there has been very little development of the surface of the Rancho. Its assessed value in the years in question ranged from $20 to over $2,000 an acre.

The amount of oil and gas that has been produced from the Rancho is negligible. From 1944 through 1970 Union drilled 22 wells and 7 "side-track wells" and discovered but one small oil field which is not located on the assessment parcels involved in this case.

Union has, however, conducted extensive geological studies of the Rancho. These indicate there are only 10 areas possibly meriting further exploration and it is extremely unlikely, based on the prevailing discovery rate, that any oil and gas in commercial quantities will be found by drilling within these 10 prospective areas. Furthermore, these 10 areas are located in the mountainous northern portion of the Rancho. They could be tested, drilled and produced by utilizing not over 100 acres of the surface of the Rancho and access to this 100 acres could be gained by existing public roads and other roadways. The assessments before us apply to 83 non-producing parcels and 3 producing parcels.

The trial court determined that the county board of supervisors, acting as a constitutional board of equalization (Cal. Const., art. XIII, § 9), in upholding the challenged assessments, had committed errors of law and that its determinations with respect to the assessments were not supported by the weight of the evidence. In so determining the court used the wrong rule of evidentiary review (see *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 34-36 [112 Cal.Rptr. 805, 520 P.2d 29]), but the correct standard of review otherwise. (*Westlake Farms, Inc.* v. *County of Kings,* 39 Cal.App.3d 179, 183-185 [114 Cal.Rptr. 137].) Pursuant to Code of Civil Procedure, section 909, for reasons hereafter set forth, we find that the findings of the board in support of the challenged assessments are not supported by substantial evidence. More specifically, we agree with the trial court and with Union that the rights of surface entry portion of the mineral rights assessed was without a separate and additional market value on the lien dates of the tax years in question.

## Rationale

Each of the mineral rights before us includes a right of surface entry—that is, a right to use the surface of the land to the extent reasonably necessary for the discovery, development and production of oil and gas. (See *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637, 649-650 [52 P.2d 237].) The owner of a mineral right of this nature must retain at least the geographical portion of the included right of surface entry necessary for the full exploitation of the mineral right. On the other hand, the existence of this portion of the mineral right, unrestricted geographically, as Union's right is in the Rancho, may reduce the value of the surface subject to the mineral right because of the possibility of the exercise of the right of surface entry by the owner of the mineral right. Whether the exercise will occur, though, depends entirely upon the oil and gas potential of the land subject to the mineral right.

A right of surface entry is ordinarily transferred merely as a part of the mineral right. But occasionally one interested in the elimination of the possible economic cloud of the right of surface entry portion of a mineral right and/or one interested in the development, lease or sale of the surface itself[1] may wish to eliminate the right of surface entry either totally by purchasing the mineral right or partially by purchasing the right of surface entry alone over substantially all of the land subject to the mineral right—thereby restricting drastically the geographical extent of the right of surface entry.

The right of surface entry, if sold as a part of the mineral right, obviously has no separate or incremental value apart from the mineral right. It is merely an indispensable portion of the mineral right, but it is without additional value.[2] On the other hand, if the right of surface entry is transferred separate and apart from the remainder of the mineral right, it clearly has some distinct incremental value. The extent of such potential additional value of a right of surface entry, while still unseparated from the remainder of the mineral right, depends upon the potential for such separation. Is separation a probability or merely a possibility? This depends on both the oil and gas potential of the land subject to the mineral right and upon the existence of a demand for a beneficial use of the surface with which its use for oil and gas purposes might conflict.

---

[1] This would be either the owner or a prospective owner of the surface.

[2] If there is a feasible way to obtain the oil and gas from outside of the surface of the land subject to a mineral right, there is no need to retain the right of surface entry portion of the mineral right. Otherwise possible drillsites must be retained.

But the mineral rights before us have remained practically intact. Only one right of surface entry covering approximately 20 acres of the Rancho's roughly 31,000 acres of surface has ever been quitclaimed. Although Union would possibly be willing to sell its right of entry to all but perhaps 100 acres of the remainder of the Rancho, the record contains no evidence of the existence of any demand, actual or potential, whatsoever by others for these rights during the taxable years in question. Since the possibility of Union's exercise of its mineral rights over this acreage was quite remote, both the owners and any potential owners of the surface subject to these rights had little reason to purchase Union's right of surface entry during this period. In this connection we note that the record contains no evidence of any imminent development of the surface of any part of the Rancho or of the surface of any substantial acreage in the immediate vicinity of the Rancho. ▮▮▮ In short, there is nothing in the record indicating that a reasonably probable (actual or potential) market existed in the taxable years in question for the sale in separate form of Union's rights of surface entry within the Rancho. Without evidence of the existence of such a probable potential market for these possibly marketable rights (see *Olson* v. *United States* (1934) 292 U.S. 246, 257 [78 L.Ed. 1236, 1245-1246, 54 S.Ct. 704]; *People* v. *Ocean Shore Railroad,* 32 Cal.2d 406, 426 [196 P.2d 570, 6 A.L.R.2d 1179]; *Joint Highway Dist. No. 9* v. *Railroad Co.,* 128 Cal.App. 743, 756-757 [18 P.2d 413]; *People* v. *McReynolds,* 31 Cal.App.2d 219, 224 [87 P.2d 734]), there is nothing to support the challenged assessments of approximately $58 an acre of them.[3]

Our Constitution commands that all nonexempt property in the state be taxed in proportion to its value (Cal. Const., art. XIII, § 1; cf. Rev. & Tax. Code, § 201) and that all such property be assessed for taxation at its full cash value. (Cal. Const., art. XIII, § 37; cf. Rev. & Tax. Code, § 401.) ▮▮▮ "Full cash value" means market value. (*De Luz Homes, Inc.* v.

---

[3]The county's assessments of these rights of surface entry were based upon a report of the supervising appraiser of the county assessor to the county board of equalization and his testimony before it. This witness relied principally upon several claimed comparable sales of rights of surface entry and a few offers to sell such rights. But, with the one exception mentioned, none of these sales or offers related to land within the Rancho and none indicated any probability that an actual potential market existed for the sale of Union's rights of surface entry within the Rancho to other owners of the surface there.

It does not appear reasonable that one owning the surface of land assessed at $20 an acre, for example, would be willing to pay $58 an acre to eliminate the right of surface entry thereon. Approximately one-third of the surface of the Rancho was assessed during the tax years at issue from $20 to $50 an acre. Similarly, since the right of surface entry had already been exercised, at least in part, upon the three producing parcels, one wonders how these rights could have been sold during the tax years in question.

*County of San Diego,* 45 Cal.2d 546, 561-562 [290 P.2d 544].)
 There being no substantial evidence to support the assessments of market value placed by the county on Union's rights of surface entry within the Rancho, the trial court's judgment refunding the property taxes paid upon such assessments is legally correct.

## DISPOSITION

The judgment is affirmed.

Ford, P. J., and Allport, J., concurred.

A petition for a rehearing was denied September 25, 1974, and appellant's petition for a hearing by the Supreme Court was denied October 24, 1974. Wright, C. J., did not participate therein.