**TOWN OF ST. JOHN, et al., James K. Gilday, Dimple Clarine Shelton and William E. Wise, Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 49T10–9309–TA–00070.

Tax Court of Indiana.

May 31, 1996.

Thomas M. Atherton, Dutton Overman Goldstein & Pinkus, Indianapolis, Peter H. Donahoe, Hill Fulwider McDowell Funk & Matthews, P.C., Indianapolis, James K. Gilday, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, Richard A. Waples, Indiana Civil Liberties Union, Indianapolis, for petitioners.

Pamela Carter, Attorney General of Indiana, Jon S. Laramore, Deputy Attorney General, Indianapolis, Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for respondent.

Indiana Association of Realtors, Inc., By: Jodi Tuttle, Indianapolis, Amicus Curiae in support of Petitioners.

FISHER, Judge.

### STATEMENT OF THE CASE

The Town of St. John, James K. Gilday, Dimple Clarine Shelton, and William E. Wise (the Taxpayers) challenge the constitutionality of Indiana's statutory system of real property taxation.

### ISSUE

The Taxpayers have raised four issues for the court's consideration. Because the court finds that one of those issues is dispositive, it will address that issue only:

Whether Article 10, § 1 of the Indiana Constitution requires that all real property assessments be based on market value.

### BACKGROUND

In Indiana, real property[1] is assessed on the basis of its "true tax value." IND.CODE

---

1. IND.CODE 6–1.1–1–15 defines real property as:

(1) land located within this state;
(2) a building or fixture situated on land located within this state;
(3) an appurtenance to land located within this state; and
(4) an estate in land located within this state, or an estate, right, or privilege in mines located on or minerals, including but not limited to oil or gas, located in the land, if the estate, right, or privilege is distinct from the ownership of the surface of the land; and
(5) notwithstanding IC 6–6–6–7, a riverboat licensed under the provisions of IC 4–33 for which the state board of tax commissioners shall prescribe standards to be used by township assessors.

6–1.1–31–6(c). " '[T]rue tax value does not mean fair market value [2] ... [but rather] the value determined under the rules of the state board of tax commissioners.' " *Id.* (footnote added).

 The State Board of Tax Commissioners (the State Board) is an administrative agency created by the Indiana legislature. IND.CODE 6–1.1–30–1. It is required by law to: "(1) interpret the property tax laws of this state; (2) instruct property tax officials about their taxation and assessment duties; and (3) see that all property assessments are made in the manner provided by law." IND.CODE 6–1.1–35–1. Implicit in this grant of power is the State Board's authority to effectuate the regulatory scheme outlined in Indiana's property tax statutes. *See Miller v. Gibson County Solid Waste Management Dist.*, 622 N.E.2d 248, 259 (Ind. Tax 1993). Accordingly, the State Board has promulgated regulations for determining the "true tax value" of real property. These regulations, collectively known as the Indiana Assessment Manual, are found in the Indiana Administrative Code, Title 50, Article 2.1 (Title 50).

Under Title 50, the "true tax value" of non-agricultural land (i.e., commercial, industrial, and residential land) is determined by a county land valuation commission and subsequently approved by the State Board. 50 I.A.C. 2.1–2–1. *See also* IND.CODE 6–1.1–4–13.6. Each county has its own land valuation commission to collect and analyze sales data for the county and, on the basis of that information, it determines the values of all the land contained therein. 50 I.A.C. 2.1–2–1. After the values have been approved by the State Board, they are compiled in a County Land Valuation Order. In theory, the "true tax value" of non-agricultural land approximates its market value.

The "true tax value" of agricultural land is determined by a county agricultural land advisory committee. *See* IND.CODE 6–1.1–4–13. Each county has its own county agricultural land advisory committee. Unlike the county land valuation commission, however, it does not collect and analyze sales data for agricultural land within the county. Rather, it determines the "true tax value" of agricultural land by taking a base rate of $495 per acre and then making adjustments up or down to reflect the soil's capacity to produce crops. 50 I.A.C. 2.1–2–2.[3] As a result, the "true tax value" of agricultural land is an attempt to approximate a value based in part on its earning capacity.

The "true tax value" of an improvement [4] is calculated by the "reproduction cost" of the item, less any physical depreciation or obsolescence depreciation to which it is entitled. 50 I.A.C. 2.1–5–1. Reproduction cost is defined as the "whole-dollar cost of reproducing the item." 50 I.A.C. 2.1–3–3. The "reproduction cost" of an improvement, however, is not the *actual* cost of reproducing the item. Rather, it is the "reproduction cost" as specified in the State Board's "cost schedules." *See* 50 I.A.C. 2.1–3–3; 50 I.A.C. 2.1–3–5; 50 I.A.C. 2.1–4–5.[5] Thus, the "true tax value" of an improvement does not necessarily approximate its market value.

In summary, "true tax value" is a figure which is produced by the application of the State Board's mechanical rules and formulas set forth in Title 50. *See also* Jerrold F. Janata, ed., *Property Taxation* 159 (2d ed. 1993). Everything needed to calculate "true tax value" is set forth in Title 50; evidence of value external to Title 50 is irrelevant. As a result, evidence of an improvement's actual reproduction cost or evidence of the actual market value of land is irrelevant under the "true tax value" system.

**2.** Within this opinion, the terms "fair market value" and "market value" are used interchangeably.

**3.** Other classes of land, such as windbreaks, filter strips, forest lands, and wildlife habitats, are statutorily valued at $1 per acre. *See* IND.CODE 6–1.1–6.2–9; IND.CODE 6–1.1–6.7–9; IND.CODE 6–1.1–6–14; IND.CODE 6–1.1–6.5–8.

**4.** "Improvement" is a term of art that refers to buildings, fixtures, or appurtenances located on the land. *See* I.C. 6–1.1–1–15.

**5.** Generally, the "cost schedules" effective for the 1989 general reassessment reflect 1985. reproduction costs which were then reduced across the board by fifteen percent. *See Transcript* at 676, 694–95, 703–09.

## FACTS AND PROCEDURAL HISTORY

This case arose on September 3, 1993, when the Town of St. John [6] filed an original tax appeal against the State Board. Later, James K. Gilday, Dimple Clarine Shelton, and William E. Wise, each of whom owns real property in Marion County, Indiana, also filed original tax appeals against the State Board. Because each of these petitioners raised the same issue, the court consolidated their cases. *See Russell v. Johnson,* 220 Ind. 649, 658–59, 46 N.E.2d 219, 223 (1943) (quoting *Lumiansky v. Tessier,* 213 Mass. 182, 188–89, 99 N.E. 1051, 1053–54 (1912)).

The Taxpayers argue that the "true tax value" system is inequitable because its application yields different "true tax values" for properties with comparable market values. The Taxpayers assert that for the 1989 general reassessment, some properties were assessed with "true tax values" equal to their market values, others were assessed with "true tax values" in excess of their market values, and still others were assessed with "true tax values" well below their market values. Thus, they contend that the State Board's "true tax value" system violates Article 10, § 1 of the Indiana Constitution which states:

> The General Assembly shall provide, by law, *for a uniform and equal rate of property assessment and taxation* and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND.CONST. art. 10, § 1(a) (emphasis added). Furthermore, the Taxpayers contend that the term "just value" (or "just valuation" as it is used in Article 10, § 1) is synonymous with the term market value. Indeed, they maintain that market value is the only meaningful standard by which the equality and uniformity of real property assessment and taxation can be measured.

The State Board claims, however, that the "just value" of real property is not necessarily its market value; rather it is a value that is determined through the use of any rational method of property valuation. The State Board explains that a method of property valuation is rational when it places identical values on properties that are "physically identical and used identically." *Post–Trial Brief of Respondents on Constitutional Issues* (filed Dec. 4, 1995) at 15. Thus, the State Board maintains that although Indiana's "true tax value" system values real property on a basis other than market value, it values physically identical properties identically thereby meeting the constitutional mandate that property be assessed according to its "just value."

This court must therefore determine the meaning of the language in Article 10, § 1 as it applies to the assessment and taxation of real property.[7]

## DISCUSSION AND ANALYSIS

■■■ When a court is called upon to interpret a constitutional provision, it must seek the meaning intended by both those who framed it and those who ratified it. *Bayh v. Sonnenburg,* 573 N.E.2d 398, 412 (Ind.1991), *reh'g denied, cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415–16 (1992). To accomplish this, the court examines "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of [the] constitution, and case law interpreting the specific provision[ ]." *Indiana Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 298 (Ind.1994).

### A. THE HISTORY AND THE PURPOSE OF ARTICLE 10, § 1

The portion of Article 10, § 1 at issue today was adopted by the Constitutional Convention in 1851. The Convention was called to address the various economic prob-

---

**6.** The Town of St. John is a municipal corporation in St. John Township, Lake County, Indiana. It represents a group of taxpayers who: (1) own real estate in either the Town of St. John, Lake County, Indiana, or St. John Township, Lake County, Indiana; and (2) appealed their individual property assessments for 1989. This court certified the taxpayers as a class, under Ind.Trial Rule 23, on September 15, 1994. *Class Certification Order,* Case No. 49T10–9309–TA–00070 at 2 (issued September 15, 1994).

**7.** While the requirements of Article 10, § 1 also apply to personal property, the assessment of personal property is not at issue in this case.

lems associated with the development of Indiana's infrastructure. *See Lafayette, M. & B.R.R. v. Geiger,* 34 Ind. 185, 205 (1870). In his annual message to the General Assembly in January of 1848, Governor James Whitcomb explained that one of these economic problems was "the great disparity between the amount of the [State's] debt, and the ability of the State for its discharge by means of taxation." *House Journal,* 32d sess. 127 (1848). Whitcomb attributed this disparity, in part, to the inadequacies of the existing property tax system:

A slight examination of our ... system will be sufficient to demonstrate its susceptibility of improvement. Under its workings, it is quite manifest that a large amount of the invisible wealth of the community, such as corporation and other stock, cash on hand, or at interest, and the more portable and valuable kind of personal property, &c., is not found upon assessment rolls. This description of taxables is generally owned by those best able to pay, and their non-assessment leaves the burden of taxation so much the heavier on property, which is visible, and especially on lands which cannot escape notice and scrutiny, &c., which the true policy of our State requires should not be visited with disfavor.

*House Journal,* 32d sess. 125 (1848).

The substance of Article 10, § 1 was first proposed at the Convention by Delegate Daniel Read of Monroe County. His remarks indicate that his intent for proposing the provision was to ensure that all property wealth was taxed so that "the burdens of supporting government should fall in just proportions upon those who enjoy its benefits." 1 *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana, 1850* at 946 [hereinafter *Debates* ]. As Read explained:

There is manifest injustice in permitting property, in the hands of the wealthy, which ought to be taxed as other property, to escape taxation altogether, or to be taxed only on a very small part of its value.

\* \* \* \* \* \*

It is to me a strange doctrine, that, in this country, a man may invest his money in any kind of stocks, and claim for it an exemption from taxation. It runs athwart all my notions of justice and right, that any one may live in our midst—may enjoy the full protection of Government—invest his money in the safest funds known in the country, and yet entirely escape taxation. He may, according to this doctrine, have the best fortune in Indiana, and pay on it not a dime to support the Government which surrounds him with safety.

*Id.* Accordingly, Read proclaimed that "no provisions are more proper for a Constitution, than those requiring equality of assessment for purposes of taxation. The duty of the Legislature to devise a system which will secure such equality and which will cause all the property of the State to be brought under taxation, should be held forth in the Constitution." *Id.* at 941.

The remarks of other delegates at the Convention further indicate that the purpose of Article 10, § 1 was to guarantee that property wealth in the form of stocks and bonds would be taxed equally and uniformly with property wealth in the form of real estate. Delegate Borden of Allen County stated:

Could all the stocks now held in the State, bear their just proportion of taxation, it would relieve the agricultural interests of the State from a large amount of taxation, which they are now compelled to bear. It is easy for assessors to ascertain the amount of property belonging to men living on small farms, with but little means—and such property is always taxed at its full value. This, however, has not been the case with the more wealthy capitalists of the State. If there was a just and equal system of taxation in force, I have no doubt that [an additional] three to five hundred thousand dollars would be brought into the State treasury annually [from taxing stocks and bonds].

*Id.* at 945.[8] Delegate Bascom of Wells County stated, "I take the ground that in fixing

---

8. In responding to a concern that the State lacked the power to tax stocks and bonds alto-

gether, Delegate Borden stated:

upon taxable property of this State we should include bank stock and property.... There is no inducement for a man to invest his money in real estate in this country, on account of the heavy tax—and he has only to invest his money in the stock of the Bank, and he is entirely free from taxation." *Id.* at 948–49. Similarly, Delegate McFarland of Tippecanoe County explained, "I am satisfied from the experience of the past ... that there should be a uniform mode of taxation.... Scattered over this State ... is a large amount of property, which there is no more propriety in exempting from taxation, than there is in exempting the private property of individuals." *Id.* at 949.

From these remarks, the court concludes that when Article 10, § 1 was adopted and later ratified as part of the 1851 Indiana Constitution, the Indiana property tax was intended to be a tax on property wealth. Thus, the great object of Article 10, § 1 was to ensure that property taxes were imposed on all forms of property wealth *equally* and *uniformly.* In other words, the framers of Article 10, § 1 intended that each taxpayer's property wealth bear its proportion of the overall property tax burden.

In reviewing the historical debate surrounding the adoption of Article 10, § 1, the court notes that the framers never explicitly stated that real property was to be assessed on the basis of its market value. Consequently, the court is left with no direct indication as to what they intended the "just value" of property to be. The court's inquiry must therefore continue with an examination of early Indiana Supreme Court cases which construe and apply Article 10, § 1. *See Collins v. Day,* 644 N.E.2d 72, 77 (Ind.1994).

### B. CASE LAW INTERPRETING ARTICLE 10, § 1

In the years following the adoption of Article 10, § 1, the Indiana Supreme Court recognized that the object of the Convention was to devise a property tax system which would distribute the burdens of taxation

equally and uniformly. *Bright v. McCullough,* 27 Ind. 223, 230 (1866). "To this end the primary principle adopted is that taxes shall be assessed on the property liable thereto, according to its just value." *Id.* Consequently, the Supreme Court recognized that there was one, and only one, standard by which all property wealth was to be measured—its "just value." *See id.*

But what is "just value?" It has been said that the term is the equivalent of "correct," "honest," or "true" value. *State ex rel. Lewis v. Smith,* 158 Ind. 543, 563, 63 N.E. 25, 63 L.R.A. 116 (1902) (Dowling, J., dissenting). Furthermore, its use is "intended to guard [against] an arbitrary valuation of property by the State." *Id.* Such a definition is, however, not particularly helpful, as it begs the question "what is value?"

■ The fundamental rule of real property taxation is that the value of the property is the basis of taxation and the standard of valuation "is its present actual market value, which is variously described as its 'fair market value,' its 'cash value,' its 'true value in money,' its 'actual value as defined by market value,' [or] its 'full cash value.'" 72 Am. Jur.2d *State and Local Taxation* § 759 (1974). Market value is defined as "the price which [a piece of property] might be expected to bring if offered for sale in a fair market." *Black's Law Dictionary* 971 (6th ed. 1990). *See also Webster's Third New International Dictionary* 1383 (1981).

Some states have declared that the "value," "value in money," "full cash value," and "full value" of real property is its market value. *See Union Oil Co. v. County of Ventura,* 41 Cal.App.3d 432, 436, 116 Cal.Rptr. 13, 16 (1974); *Imperial Palace, Inc. v. State, Dept. of Taxation,* 108 Nev. 1060, 1063, 843 P.2d 813, 816 (1992); *People ex rel. Parklin Operating Corp. v. Miller,* 287 N.Y. 126, 129, 38 N.E.2d 465, 466 (1941); *State ex rel. Cunningham v. Thomas,* 16 Utah 86, 90, 50 P.

---

The gentleman ... remarked that Government had the right to borrow money, and for that purpose issued stocks; and if we taxed that stock, we would thus restrict the General Government in the exercise of one of its powers. The fallacy of this argument is very evident, for

we do not tax the stocks of the United States, but we tax the persons holding them—tax the amount of money invested in those stocks, as personal property.
*Id.* at 945.

615, 615–16 (1897). Other states have held that the "just value" of real property is its market value. *See Walter v. Schuler*, 176 So.2d 81, 85–86 (Fla.1965); *Crow v. Bd. of Equalization*, 104 Idaho 681, 688, 662 P.2d 1125, 1132 (1983); *Alfred J. Sweet, Inc. v. City of Auburn*, 134 Me. 28, 31, 180 A. 803, 804 (1935). While Indiana's Supreme Court has not explicitly equated "just value" with market value, it has implicitly acknowledged that the terms are equivalent.

■ For example, in 1866, the Indiana Supreme Court used Article 10, § 1 to invalidate a statute which imposed a tax of one cent on each acre of taxable land for road purposes. *Bright*, 27 Ind. at 233. In so doing, it declared that under Article 10, § 1, all property taxes, whether they be for state, county, township, or road purposes, must be *ad valorem*. *Id.* Consequently, property taxes must be levied on the value of property, and not as a specific tax on a fixed amount, without regard to the property's value. *Id.* at 228. Later, the Indiana Supreme Court reiterated that "all taxation, in this State, is upon values, and no[t] upon amounts." *Florer v. Sheridan*, 137 Ind. 28, 33–34, 36 N.E. 365, 366 (1894). In *Florer*, the Supreme Court upheld a statute which provided that the "just value" of taxable credits was to be determined by subtracting the *bona fide* indebtedness from the gross amount of the notes. *Id.* at 41, 36 N.E. at 369. As the Supreme Court explained, Article 10, § 1 "requires that property, wealth, substantial values, shall be taxed, but not imaginary values. As against an insolvent maker, the true value in money of the credit can only be taxed and so it is where a man has both credits and debts ..." *Id.* at 42, 36 N.E. at 369.

■ In another case, the Indiana Supreme Court held that "[i]t is manifest that the taxable value of property is its fair cash value, a fair cash value being the market or usual selling price." *Willis, Auditor v. Crowder*, 134 Ind. 515, 517, 34 N.E. 315, 316 (1893). The Supreme Court then determined that it was inappropriate to measure the market value of property by merely comparing it with similar property in kind and char-

acter. *Id.* at 517–18, 34 N.E. at 316. As the Supreme Court explained:

This is not a finding of [ ] market value ... The comparison stated may be correct, and at the same time neither class of the property have [sic] a market value. This finding is not susceptible of the construction that it states the actual value of the property.

*Id.* at 518, 34 N.E. at 316.

Similarly, the Indiana Supreme Court later declared that when valuing property at its "true cash value," "[i]t is no answer to say that [ ] taxes are imposed upon an equal valuation with other lands, for, if so, that only proves that none of them are assessed at their true cash value." *Smith v. Stephens*, 173 Ind. 564, 568, 91 N.E. 167, 169 (1910). Later, the Indiana Supreme Court held that it was improper to determine the "just value" of a particular piece of property on the basis of another property's "true cash value," and not its own. *Finney v. Johnson*, 242 Ind. 465, 469–70, 179 N.E.2d 718, 719–20 (1962). In *Finney*, the Indiana Supreme Court held that a statute fixing the value of household goods at an amount equal to five percent of the assessed valuation of the improvements in which they were kept violated Article 10, § 1. *Id.*

■ These judicial decisions, particularly those contemporaneous with the adoption of Article 10, § 1 and practiced and acquiesced in for a period of years, are accorded strong and superseding precedential value in determining that the term "just value" means market value. *See Collins*, 644 N.E.2d at 77. Indeed, these cases indicate that the Indiana Supreme Court has recognized for over a century that Indiana's property tax is *ad valorem*. *See also Eakin v. State ex rel. Capital Imp. Bd. of Managers*, 474 N.E.2d 62, 69, n. 1 (Ind.1985) (Hunter, J., dissenting) (explaining that the Indiana Supreme Court has uniformly limited Article 10, § 1 solely to *ad valorem* property taxes) (citing *Lutz v. Arnold*, 208 Ind. 480, 193 N.E. 840, 849 (1935); *Gafill v. Bracken*, 195 Ind. 551, 145 N.E. 312 (1924); and *Thomasson v. State*, 15 Ind. 449, 451 (1860)). The touchstone in the assessment of real property for *ad valorem* tax purposes is the market value of the prop-

erty. *See* Janata, *Property Taxation* at 167 ("[o]ne way or another, an assessor must refer to market value in assessing real property for *ad valorem* purposes").

## C. LEGISLATIVE INTERPRETATION

■ Lending additional support to the court's holding is the legislature's long-standing interpretation that the "just value" of real property is its market value. In 1852, one year after the adoption of the Constitution and Article 10, § 1, the Indiana legislature enacted a statute which read:

Sec. 49. The appraiser shall, upon actual view make a true valuation of all lands together with the improvements and buildings thereon, or affixed thereto, at their *full value in money,* as he would appraise the same in payment of a just debt due from a solvent debtor ...

Ind.Rev.Stat., 1852, Chapter 6, Assessment of Taxes, Section 49. The legislature did not, however, provide a statutory definition for the term "full value in money." Consequently, the court will give the term its plain, ordinary, and usual meaning as found in a dictionary. *See Johnson County Farm Bureau Coop. v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 581 (Ind.Tax 1991) *aff'd* 585 N.E.2d 1336 (Ind.1992). Dictionaries published proximate to the adoption of Article 10, § 1 define the word "value" as the "price, worth ... price equal to the worth of the thing bought." *Walker's Critical Pronouncing Dictionary and Expositer of the English Language* (1815). *Webster's Dictionary* (1856) defined "value" as "worth; value is what it will bring in market." Thus, at the time this statute was enacted, the term "value" in and of itself meant market value.

Later, from 1891 until 1984, the term "true cash value" was the statutorily designated standard of property valuation. The legislature defined "true cash value" as "the price [the property] would bring at a fair, volun-

tary sale, not a forced or Sheriff's sale." Laws of Indiana, 1891, Chapter 99, Section 95. *See also* IND.CODE ANN. (Watson's Revision) § 14181 (Burns 1926) ("Real property shall be valued ... at [its] full, true cash value"). In 1937, the legislature further provided that

All property shall be assessed for taxation at a just valuation ... In determining such valuation, all [assessing] officials ... shall take into consideration all of the following elements insofar as the same shall be applicable: (a) the true cash value; (b) the normal earning capacity under conditions of average efficiency of operation of property of like kind and character, similarly located; (c) the replacement cost less proper depreciation; (d) voluntary sales, if any, of similar property in the same vicinity; and (e) the prospective value of such property, if any.

1937 Ind.Acts, Chapter 19, Section 3 ("Basis of Assessment—Valuation of Property").[9]

Thus, the legislature has historically required that property be assessed on the basis of its market value.[10] These statutes provide compelling evidence that our legislative forefathers, in order to effectuate the mandate embodied in Article 10, § 1, determined that the valuation of property for assessment purposes must be based on the market value of the property.

## D. ADDITIONAL ISSUES

■ Despite the court's holding that the "just value" of real property is its market value, the State Board raises three specific issues which the court finds necessary to address. First, the State Board asserts that because Indiana courts have routinely held that different *methods* for assessing different kinds of property are valid, "the Constitution cannot be held to prescribe a single *method* for assessing property such as fair market value." *Trial Memorandum of the Respon-*

---

**9.** Elements (b), (c), and (d) are the three standard appraisal methods currently used for determining the "market value" of real property. *See generally* Comment, *The Road to Uniformity in Real Estate Taxation: Valuation and Appeal,* 124 U.Pa.L.Rev. 1418, 1430–40 (1976).

**10.** It was only as recently as 1984 that the legislature established that the term "true cash value" no longer meant fair market value. *See* P.L. 42–1984, § 2. Then, in 1986, the legislature deleted the term "true cash value" altogether and replaced it with term "true tax value." P.L. 24–1986, § 23.

*dents* (filed July 6, 1995) at 13 (emphasis added).

Individual properties have unique characteristics and those unique characteristics give property its value. To account for these unique characteristics, the Indiana Supreme Court has repeatedly held that different assessment *methods* may be used for valuing different classes of property. *See Clark v. Vandalia R.R. Co.,* 172 Ind. 409, 86 N.E. 851 (1909) (method of assessing railroad property permitted in order to secure a fair valuation of the whole property and an equitable distribution among the counties affected). *See also Smith v. Stephens,* 173 Ind. 564, 91 N.E. 167 (1910) (assessment of banks); *Board of Comm'rs v. Johnson,* 173 Ind. 76, 89 N.E. 590 (1909) (classification of banks permitted where practical effect is to place the classes on the same footing in taxing result); *State ex. rel Lewis v. Smith,* 158 Ind. 543, 63 N.E. 25, 63 L.R.A. 116 (statute permitting mortgage deduction on real estate).

The Indiana Supreme Court has also held, however, that regardless of the *method* used to calculate value, the property's "just value" must nevertheless be attained. *See Clark,* 172 Ind. at 411, 86 N.E. at 852. In other words, the Supreme Court has declared that Indiana's Constitution prescribes a common standard for the valuation of all property—"just value." Because this court has determined that "just value" means market value, market value is the *standard* by which all property wealth is measured. Market value is not, as the State Board purports, a *method* of assessing property.

▮ Next, the State Board asserts that "true tax value permits the same yardstick—replacement cost—to be applied to all classes of improved property, residential, commercial and industrial.... [whereas f]air market value ... permit[s] different yardsticks for different kinds of property—usually comparable sales for residential; income for commercial; and replacement cost for industrial." *Post–Trial Brief of the Respondents on Constitutional Issues* (filed December 4, 1995) at 8–9. Again, the State Board is mistaken.

In the context of property taxation, a "yardstick" is the *standard* of property valuation. It is an external unit of measurement by which the accuracy of the method used to calculate value is gauged. Indiana's "yardstick" for property valuation is "just value," or market value.

▮ In turn, there are three generally accepted appraisal *methods* for determining the market value of real property: (1) the sales approach; (2) the income or capitalization approach; and (3) the cost approach. *See generally* Comment, *The Road to Uniformity in Real Estate Taxation: Valuation and Appeal,* 124 U.Pa.L.Rev. 1418, 1430–40 (1976). Theoretically, all three methods are employed in any appraisal, but often only one or two are useful or even usable in a given appraisal, depending on its nature and purpose. Consequently, the State Board erroneously states that a market value system "permits different yardsticks for different kinds of property." Rather, it permits different *methods* for calculating one "yardstick"—market value. The Indiana Constitution does not require a uniform method of valuation. *The Louisville and N.A.R.R. Co. v. State,* 25 Ind. 177, 180 (1865); *Indiana State Bd. of Tax Comm'rs v. Lyon and Greenleaf Co.,* 172 Ind.App. 272, 276, 359 N.E.2d 931, 934 (1977). Instead, it requires "such regulations as shall secure a just valuation for taxation of all property." *Id.*

Admittedly, "reproduction cost minus depreciation" is recognized as a *method* for determining the "just value" or market value of real property. *See generally* Comment, *The Road to Uniformity in Real Estate Taxation: Valuation and Appeal,* 124 U.Pa. L.Rev. 1418, 1430–40 (1976). However, as the State Board admits, its method of "reproduction cost minus depreciation" is designed to secure "true tax value," which is unrelated to market value. Because this court holds that the "just value" of real property is its market value, the State Board's method of calculating "true tax value" cannot withstand constitutional attack. *See Lyon and Greenleaf* at 278, 359 N.E.2d at 934 ("a method of cost valuation which does not move towards the goal of securing a just valuation of all property ... cannot withstand constitutional attack").

Finally, the State Board argues that if the Constitution mandates a system of real property taxation based on fair market value, then there can be "no room for the enactment of many social and economic policies that are accomplished through [the current "true tax value" system of] property taxation." *Post–Trial Brief of Respondents on Constitutional Issues* (filed Dec. 4, 1995) at 13. For example, the State Board asserts that if fair market value is the required basis of assessment, agricultural land cannot be assessed on the basis of its productivity. *See* 50 I.A.C. 2.1–2–2. Likewise, forest lands, windbreaks, and wildlife habitats cannot be valued at the statutory rate of $1 per acre. *See* n. 3, *infra*.

■■ The court recognizes that preferential tax treatments offer important economic incentives to land owners to retain their land in preferred uses. Indeed, the court is aware that the income derived from agricultural and forest production may be low relative to the capital value required for the enterprise, making some farmers and foresters "land rich and income poor." *See* Jane Malme, *Preferential Property Tax Treatment of Land* at 2 (Lincoln Institute of Land Policy, 1993). Nevertheless, the court must limit its inquiry to what the Constitution means, regardless of the merits of the current preferential treatment programs. Indeed,

> The doctrine of constitutional interpretation in Indiana has been that the Constitution is a fundamental instrument, not to be stretched and strained to meet the exigencies and necessities of the moment. It is a basic instrument which is rigid and firm and will withstand the emotional upheavals

of the time, in the interest of protecting continually the rights guaranteed in the Constitution. The Constitution was framed to be strictly observed by all public officials and particularly the courts as guardians of the citizens' rights stated therein.

*Finney,* 179 N.E.2d at 721.

Under Article 10, § 1, all property is to be assessed and taxed equally and uniformly based on the property wealth it represents. In order to effectuate this directive, Indiana's statutory system of real property taxation must be based on a system which uses market value as the measure of equality and uniformity.[11]

## REMEDY

■■ For the foregoing reasons, this court holds that Article 10, § 1 of the Indiana Constitution requires a system of property assessment and taxation based on market value. Accordingly, Indiana's "true tax value" system of property taxation under IND. CODE 6–1.1–31–6(c) and Title 50 are unconstitutional.

The court orders the State Board to make future real property assessments for purposes of taxation under a market value system. The court recognizes, however, that the current "true tax value" system cannot be changed overnight without causing disorder and confusion in public affairs. The State Board must be given a reasonable period of time to adopt and implement new regulations which use market value as the measure of uniformity and equality in the assessment of real property. Furthermore, because the State Board's rule-making au-

11. The court notes, however, that most state governments have universally adopted programs of preferential tax treatment to further their land use policies. For instance, "[s]tate laws provide for various methods for determining the value of land in agricultural use. The predominant appraisal approach is the capitalization of income. Valuation of [agricultural] land according to its earning capacity is consistent with the policy of linking taxation to [actual] income derived from the land as opposed to the land's speculative market value." Malme, *Preferential Property Tax Treatment of Land* at 16. In other words, some legislatures have provided that the market value of agricultural land is based on its value in use,

and not on its value in exchange. Likewise, some legislatures have adopted a market value system based on "acquisition value" rather than "current value." In these systems, real property is assessed on the value of the property at the time it was acquired by the taxpayer, and not the value it has in the current real estate market. *See Nordlinger v. Hahn,* 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

These and other issues of preferential treatment, however, are policy decisions. Policy decisions are properly addressed by the State Board, the legislature, and the citizens of Indiana, and not this court.

thority comes from the Indiana legislature, and not this court, the Indiana legislature may need to enact legislation to enable the State Board to promulgate the regulations to effect a real property tax system based on market value.

Consequently, the Indiana legislature and the State Board are given until March 1, 1998, to bring the state's system of real property taxation into compliance with Article 10, § 1 of the Indiana Constitution. *See Great Northern Ry. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932) (when ruling on state law, a state court may decide to give its ruling prospective effect only); *Universal Group Ltd. v. Indiana Dep't of State Revenue (UGL III),* 642 N.E.2d 553, 557–58 (Ind.Tax 1994) (an Indiana court may apply its judicial ruling prospectively when it decides an issue of first impression whose resolution was not clearly foreshadowed).[12] In the interim: ·(1) real property tax assessments shall be made in accordance with the current "true tax value" system, (2) any challenges to real property tax assessments shall be governed by the existing law, and (3) real property tax assessments are not subject to challenge on the ground that the "true tax value" system violates Article 10, § 1 of the Indiana Constitution. *Cf. Hellerstein v. Assessor,* 37 N.Y.2d 1, 332 N.E.2d 279, 371 N.Y.S.2d 388 (1975) (after holding that the assessment practices of local officials were in violation of state law, the court declined to declare the previous assessment rolls a nullity and provide immediate relief; rather, the court specified a date by which the officials had to comply, allowing them to continue to use their current assessment methods in the interim); *City of New Bern,* 338 N.C. 430, 450 S.E.2d 735 (in striking down statutes relating to building inspections as violating the state constitution, the

court applied its decision prospectively only because the prior inspections could not be undone without "untoward consequences" and because officials had reasonably relied on the statutes and had acted in good faith in carrying out the legislative mandate embodied in the statutes)..

Because today's decision is applied prospectively only, petitioners Wise and Shelton are not entitled to any specific relief. Indeed, they challenged their 1989 assessments on constitutional grounds only and have not made any specific claims based on Title 50 of the Indiana Administrative Code.

Petitioner Gilday, however, challenged his 1989 assessment on both constitutional grounds and under the specific provisions of Title 50 of the Indiana Administrative Code. Consequently, his specific claims based on Title 50 may be considered under the existing "true tax value" system. The merits of Gilday's Title 50 claims will be addressed in a separate opinion, *Gilday v. State Bd. of Tax Comm'rs,* Case No.49T10–9309–TA–00070, to be handed down at a later date.

Likewise, to the extent that: (1) any individual class member represented by the Town of St. John has challenged his or her 1989 assessment on the basis of the specific provisions of Title 50; and (2) those claims are not barred by any statute of limitations or some other procedural impediment, those claims may also be considered under the current "true tax value" system.

**12.** *UGL III* relies on *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Chevron Oil* has been questioned by *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). *Harper,* however, does not affect this court's reliance on *UGL III* or *Chevron,* as today's ruling is based purely on state law. *See City of New Bern v. New Bern–Craven County Bd. of Education,* 338 N.C. 430, 443, 450 S.E.2d 735, 743 (1994).